**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SANDRA BROWN, on behalf of herself, all others similarly situated, and the general public,

 Plaintiff,

 v.

STARBUCKS CORPORATION, a Washington Corporation,

 Defendant.

Case No: 18-cv-2286-JM(WVG)

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................1

II.    NATURE OF THE ACTION ..................................................................2

III.   PARTIES .................................................................................................3

IV.    FACTUAL ALLEGATIONS ..................................................................4

A.     Defendant Unlawfully Omits That The Product Contains Artificial Flavoring ........4

B.     Defendant's Competitors Label Their Products Lawfully. ....................................10

C.     Plaintiff's and Class Purchases of the Product. .....................................................11

V.     DELAYED DISCOVERY......................................................................12

VI.    CLASS ACTION ALLEGATIONS .......................................................13

VII.   CAUSES OF ACTION ..........................................................................16

       FIRST CAUSE OF ACTION ................................................................16

       FRAUD BY OMISSION .......................................................................16

       NEGLIGENT MISREPRESENTATION...............................................17

       VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT.......................18

       VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW .................19

       (UNLAWFUL PRONG).........................................................................19

       VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW .................20

       (UNFAIR PRONG) ...............................................................................20

       VIOLATION OF THE FALSE ADVERTISING LAW .........................22

       BREACH OF EXPRESS WARRANTIES.............................................23

       BREACH OF IMPLIED WARRANTIES .............................................24

VIII.  PRAYER FOR RELIEF ........................................................................26

IX.    JURY DEMAND....................................................................................27

---

i

FIRST AMENDED COMPLAINT

Sandra Brown ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, hereby brings this action against The Starbucks Corporation ("Starbucks" or "Defendant"), alleging that certain products manufactured, packaged, labeled, advertised, distributed and sold by Defendant are deceptively and unlawfully advertised in California and the United States and otherwise violate California and federal law, and upon information and belief and investigation of counsel alleges as follows:

## I.   JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendant is a citizen of a state different from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

3.    This Court has both general and specific personal jurisdiction over the Defendant.

4.    The Court has personal jurisdiction over Defendant because Defendant's Product is advertised, marketed, distributed and sold through the State of California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendant is authorized to do business in the State of California and engages in substantial activity with the State of California; Defendant has hundreds of stores throughout the United States, including in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, Defendant has marketed and sold the Product at issue in this judicial

1

FIRST AMENDED COMPLAINT

district, and it conducts business within this judicial district. Plaintiff also purchased the Product within this District.

## II.   **NATURE OF THE ACTION**

6.     This is a consumer class action for violations of express and implied warranties, negligent and intentional misrepresentations, fraudulent omissions, and consumer protection laws, with a California class for violations of California consumer protection laws.

7.     Defendant manufactures, packages, distributes, advertises, markets, and sells a house-brand product identified as "Starbucks Sour Gummies" (the "Product").

8.     Under the Code of Federal Regulations, any Product containing artificial flavors which simulate, resemble, or reinforce the characterizing flavors must "conspicuously" disclose that fact on the "principal display panel or panels of the label." *See* 21 C.F.R. 101.22(i)(2); 21 C.F.R. 101.22(i)(3).

9.     The Product's front label identifies the Product as "Apple, watermelon, tangerine and lemon-flavored candies."

10.     Under the Code of Federal Regulations, "If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor." *See* 21 C.F.R. 101.22(i).

11.     Under the Code of Federal Regulations, apple, watermelon, tangerine and lemon are considered the "characterizing" flavors of the Product. *See* 21 C.F.R. 101.22(i).

12.     The Product contains the artificial flavor fumaric acid, which simulates and reinforces the characterizing flavors of the Product.

13.     But, the Product label fails to provide an "artificially flavored" disclosure on the "principal display panel or panels of the label" as required by California and federal law. *See* 21 C.F.R. 101.22(i)(2); 21 C.F.R. 101.22(i)(3); Cal. Health & Saf. Code § 109875,

*et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.[1]

14.    The Product is therefore falsely advertised throughout the United States and in California, and otherwise violates consumer protection laws.

15.    Defendant intentionally omitted the legally-required "artificially flavored" disclosure from consumers because consumers prefer naturally-flavored food products over products with artificial flavors, and will pay more for natural products,

16.    Defendant's packaging, labeling, and advertising scheme is intended to conceal from consumers the fact that the Product contains artificial flavoring.

17.    Plaintiff, who was deceived by Defendant's unlawful conduct and purchased the Product multiple times in California during the proposed Class Period, brings this action, on her own behalf and on behalf of California and nationwide consumers similarly situated, to remedy Defendant's unlawful acts.

18.    On behalf of the Class as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Product in violation of California law; (2) re-label or recall all existing deceptively packaged Products; (3) conduct a corrective advertising campaign to fully inform California and nationwide consumers; (4) award Plaintiff and other Class-members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and attorney fees.

### III.    <u>PARTIES</u>

19.    Defendant the Starbucks Corporation ("Starbucks" or "Defendant") manufactures, packages, labels, advertises, markets, distributes, and sells the Product in California and throughout the United States.

20.    Starbucks is a Washington corporation with its headquarters and principal

---

[1] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875, *et seq.*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate FDCA regulations necessarily therefore violates California's Sherman Law. *Id*. at § 110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

place of business located at 2401 Utah Avenue S., Suite 800, Seattle, Washington. Starbucks is registered with the California Secretary of State under entity number C1672418.

21.     Plaintiff Sandra Brown ("Plaintiff") is a resident and citizen of Santee, California who purchased the Product multiple times during the Class Period in 2017 in California for personal and household consumption.

## IV.      FACTUAL ALLEGATIONS

A. Defendant Unlawfully Omits That The Product Contains Artificial Flavoring

22.     The Product is a Starbucks private-label sour gummy candy assortment.

23.     The Product's front-of-package label claims that the package contains Apple, Watermelon, Tangerine, and Lemon-flavored sour candies.

24.     The label does not disclose that the Product contains an artificial flavor.

25.     Food products made exclusively with natural ingredients command a price premium compared to similar products that contain synthetic ingredients such as artificial flavors.

26.     California consumers, like American consumers nationwide, seek out natural food products and are willing to pay significantly more for such products when compared to food products with artificial ingredients.[2]

27.     In response to consumer feedback regarding the willingness to pay significantly more for natural food products, Starbucks maintains a health and wellness campaign stating that Starbucks listens to its customers and continues to evolve its health and wellness options influenced by customer feedback.[3]

28.     Starbucks' Director of Retail Brand Partnerships, Deb Hannah stated that "We

---

[2] "*Consumers Want Healthy Foods - And Will Pay More For Them*"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited March 22, 2018).
[3]   https://news.starbucks.com/news/customers-influence-health-and-wellness-options-at-starbucks; (last visited Apr. 10, 2018).

4

know customers are snacking on the go and looking for snacks that are healthier."[4]

29.    In conformity with its health and wellness campaign, Starbucks markets its snack food options to those seeking healthier options. For example, as part of its expanded snack options, Starbucks offers "packaged snacks" as "a great opportunity to expand our offerings to those with specific dietary needs, like gluten-free and vegan."[5]

30.    To appeal to consumers who seek out natural food products and are willing to pay more for them, Defendant omits the legally-required "artificially flavored" disclosure from the Product.

31.    Figure 1 below is a true and accurate representation of Starbucks' Sour Gummies Product front-label.

<u>Figure 1: Starbucks Sour Gummies Front Label</u>



32.    Figure 2 below is a true and accurate representation of Starbucks' Sour Gummies Product rear-label.

_____

[4] *See id.*
[5] *See id.*

FIRST AMENDED COMPLAINT

Figure 2: Starbucks Sour Gummies Rear-Label



33.     On the Product's front label, Defendant advertises four fruit flavors – apple, watermelon, tangerine, and lemon – in addition to the generic "sour" flavor.

34.     On the Product's rear label, Defendant provides an ingredient list which identifies "fumaric acid."

35.     The fumaric acid that Defendant uses in the Product is a synthetic petrochemical added to the Product to create the overall "sour" flavor and to simulate and reinforce the Product's four characterizing fruit flavors.

36.     Defendant fails to properly disclose this artificial flavor on the Product's "principle display panel" or "panels of the label, violating federal and California law in multiple ways. *See* 21 C.F.R. § 101.22(i); Cal. Health & Saf. Code § 109875, *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.

37.     Because the Product contains an artificial flavoring ingredient that simulates and reinforces the Product's characterizing flavors, the front label of the Product is required by law to prominently disclose the use of artificial flavoring. Cal. Health & Saf. Code § 109875, *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.

38.     Omitting this disclosure from the Product's front label conceals this fact from consumers, who are not required to scrutinize the rear-label for information that federal and state regulations require be displayed prominently on the front. Cal. Health & Saf.

FIRST AMENDED COMPLAINT

Code § 109875, *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.

39.   The industrial fumaric acid chemical ingredient that Defendant uses is artificially-synthesized. It is derived from petrochemicals – not from natural sources – and is therefore an artificial flavor under federal and California law.

40.   The fumaric acid is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

41.   The fumaric acid ingredient is synthesized from petrochemical feedstocks, through an intermediate chemical transformation to maleic anhydride.

42.   Maleic anhydride, also called 2,5-Furandione, is a common chemical precursor used in the industrial manufacture of various other chemicals and intermediaries, including fumaric acid.  It is also commonly used as a feedstock in other chemical manufacturing processes to make paints, polymeric plastic resins, industrial coatings, pesticides, and agricultural chemicals.[6]

43.   Starbucks uses synthetic fumaric acid in its Product to simulate, resemble, or reinforce the four characterizing fruit flavors and the generic "sour" flavor in the Product.

44.   Because the Product contains artificial flavoring, California law requires the Product to display both front- and back-label disclosures to inform consumers that the Product is artificially flavored.

45.   The Product has neither of the required disclosures.

46.   California law, incorporating U.S. Food, Drug, and Cosmetic Act regulations by reference, further requires that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

47.   Any recognizable primary flavor identified directly or indirectly on the front label of a food Product, whether by word, vignette, depiction of a fruit, or other means, is referred to as a "characterizing flavor."

---

[6] Maleic anhydride, CAS No. 108-31-6; https://www.epa.gov/sites/production/files/2016-09/documents/maleic-anhydride.pdf; last visited Oct. 2, 2018.

FIRST AMENDED COMPLAINT

48.     Any flavor components identified on the Product's front label, either in text or in recognizable pictures, are considered primary recognizable flavors and are therefore characterizing flavors for each Product.

49.     For Defendant's "Starbucks Sour Gummies" product, the "Sour" flavor and the four specifically-identified fruits are all considered characterizing flavors.

50.     If any characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both natural or artificial flavorings. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the label must prominently inform consumers that the product is "Artificially Flavored."[7]

51.     Further, a food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food."[8]

52.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

53.     In addition, a food product that does not contain any of the natural fruit comprising the advertised fruit flavors must disclose on the front label that the product is "artificially flavored."

54.     The synthetic fumaric acid in the Product simulates, resembles, and reinforces the characterizing "Sour" flavor and all the named characterizing fruit flavors.

55.     The Product violates both state and federal food labeling laws.

56.     Under California statutory labeling requirements, Defendant was required to place prominently on the Product's front and back labels a notice sufficient to allow California consumers to understand that the Product contained artificial flavorings.

57.     Defendant failed to do so, deceiving consumers and violating California law.

---

[7] California's Sherman Law, incorporating 21 C.F.R. § 101.22(i) (3), (4).
[8] California's Sherman Law, incorporating 21 C.F.R. § 102.5(c).

FIRST AMENDED COMPLAINT

58.   Plaintiff and the Class were unaware that the Product contained artificial flavoring when they purchased them.

59.   When purchasing the Product, Plaintiff and the Class were seeking a product of particular qualities, one that was consistent with the Product's front-of-package labeling and which did not contain artificial flavoring.

60.   Plaintiff is not alone in these purchasing preferences. As reported in Forbes Magazine, eighty-eight percent (88%) of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such Product, specifically including foods with no artificial flavors.[9]   Forty-one percent (41%) of consumers rated the absence of artificial flavors in food Product as "Very Important," and eighty percent (80%) of North American consumers are willing to pay a premium for foods with no artificial ingredients.[10]

61.   John Compton, a Fortune 50 food and beverage industry CEO, spoke to investors at the Morgan Stanley Consumer & Retail Conference, stating, "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

62.   Defendant's independent health and wellness campaign identifies these consumer preferences. Starbucks' Director of Retail Brand Partnerships, Deb Hannah stated "We know customers are snacking on the go and looking for snacks that are healthier."[11]

63.   After running a health and wellness campaign, Starbucks would have

---

[9] *Consumers Want Healthy Foods--And Will Pay More For Them*, FORBES MAGAZINE (Feb. 15, 2015), https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; last visited Mar. 9, 2018.

[10] The Nielsen Company, Global Health and Wellness Survey, *We Are What We Eat: Healthy Eating Trends Around the World*, (Jan. 2015); https://www.nielsen.com/content/dam/nielsenglobal/eu/nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf; (last visited Mar. 9, 2018)

[11]   https://stories.starbucks.com/stories/2016/customers-influence-health-and-wellness-options-at-starbucks/

9

FIRST AMENDED COMPLAINT

consumers believe that its products are healthier than others.

64.     Defendant labels and advertises its Product to reflect these consumer preferences — not by making the Product only with natural ingredients, but instead by omitting the legally-required disclosure informing consumers that the Product contains artificial flavors.

65.     Consumers did not know the Product contained artificial flavoring ingredients due to Defendant's omission of the legally-required disclosure, coupled with consumers' belief that Defendant's products are healthier than others.

66.     The Product's label deceived consumers into paying a price premium for an artificially-flavored product. That product was worth less than the product promised by the label, which did not disclose the use of artificial flavoring.

67.     California's Health & Safety Code states that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."  Cal. Health & Saf. Code § 110740.

68.     California law therefore required Defendant to include on the Product's label a notice alerting California consumers that the Product is artificially flavored.

69.     Defendant failed to do so.

70.     Because the Product violated California law, it was misbranded and illegal to advertise, transport, distribute, or to sell in California. Cal. Health & Saf. Code § 110740; § 110760; § 110765.

71.     Plaintiff and the Class lost money as a result of Defendant's conduct because they paid a price premium for a product that was artificially flavored when they sought to purchase one that was not.

B.     <u>Defendant's Competitors Label Their Products Lawfully</u>.

72.     Starbucks not only omits this material fact from consumers, but also gains an unfair commercial advantage in the marketplace by failing to label the Product in accordance with federal and California law.

73.     Manufacturers of competing sour and fruit candy products label their products lawfully.

74. Competing manufacturers correctly label their artificially-flavored fruit candies as "Artificially Flavored."

75. Other competing manufacturers, offering products whose labels suggest just as Defendant's do that their products are naturally flavored, truly are flavored only with natural ingredients.

76. Defendant, however, omits the legally-required disclosure regarding its use of artificial flavoring, thereby deceiving consumers, illegally cutting costs and increasing profits, competing unfairly and unlawfully in the marketplace, and hurting consumers and competitors as a result.

77. Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. These manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendant's competitors do so lawfully. Defendant does not.

C. Plaintiff's and Class Purchases of the Product

78. Plaintiff purchased the Product in California during the Class Period as defined herein.

79. Plaintiff purchased Starbucks Sour Gummies several times in 2017. Plaintiff's most recent purchase was in December 2017 at Starbucks located on 9868 Mission Gorge Road B., Santee, CA 92071.

80. The Products were purchased at the marked retail prices, typically $1.75 each.

81. Plaintiff first discovered Defendant's unlawful acts described herein in September 2018, when she learned the Product's characterizing flavors were deceptively created or reinforced using artificial flavoring even though Defendant failed to disclose that fact on the Product's label.

82. Plaintiff was deceived by and relied upon the Product's deceptive labeling, and specifically the omission of the fact that this Product contained artificial flavoring. Plaintiff purchased this Products believing it did not contain artificial flavors, based on the Product's deceptive labeling and failure to disclose that it was artificially flavored.

83. Neither Plaintiff nor any of the Class members, as reasonable consumers, are

required to subject consumer food products to laboratory analysis, to scrutinize the back label to discover that a product's front label is deceptive, or to search the label for information that federal and state regulations require be displayed prominently on the front.

84.    Defendant, but not Plaintiff or the Class, knew that this labeling was in violation of state and federal law.

85.    Because Plaintiff reasonably assumed the Product to be free of artificial flavoring, based on the Product label's omission of that fact, when it was not, she did not receive the benefit of her purchases.

86.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated California or federal law, Plaintiff would not have been injured.

87.    The Product was worth less than what Plaintiff paid for it and Class members would not have paid as much as they have for the Product absent Defendant's omissions.

88.    Plaintiff and the Class members paid a price premium for each of the Products that they purchased. That price premium will be determined by the fact finder at trial based on evidence adduced then. The anticipated price premium is significantly less than the full retail price of the Product.

89.    Plaintiff and the Class therefore lost money in the amount of the price-premium paid as a result of Defendant's unlawful behavior. Plaintiff and Class members altered their position to their detriment and suffered loss in an amount equal to the amount of the price premium when they paid for the Product.

90.    Plaintiff intends to, desires to, and will purchase the Product again when she can do so with the assurance that the Product's label is lawful and consistent with each of the Product's ingredients.

## V.    <u>DELAYED DISCOVERY</u>

91.    Plaintiff did not discover that Defendant's labeling of the Products was false and misleading until September 2018 when she learned the Products contained undisclosed artificial flavoring.

92.    Plaintiff is a reasonably diligent consumer who exercised reasonable diligence

12

in her purchase and consumption of the Product. Nevertheless, she would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, she relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with state and federal law. Furthermore, Defendant's labeling practices and non-disclosures—in particular, failing to disclose that the Product contained artificial flavoring—impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

93.     Because Defendant actively concealed its illegal conduct, preventing Plaintiff and the Class from discovering its violations of state law, Plaintiff and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.     CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

95.      The nationwide Class is defined as follows:

All U.S. citizens who purchased the Product in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

96.     The California sub-Class is defined as follows:

All California citizens who purchased the Product in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

97.     During the Class Period, the Product unlawfully omitted the legally-required "artificially flavored" disclosure and was otherwise improperly labeled. Defendant failed to label the Product as required by California and federal law.

98.     During the Class Period, Class members purchased the unlawfully-labeled

Product, paying a price premium for the Product compared to similar products lawfully labeled.

99.   The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation.

100.   The Product is offered for sale at over 100 Starbucks locations in California alone; the Class numbers at a minimum in the tens of thousands. This action has been brought and may properly be maintained as a class action against Defendant. While the exact number and identities of other Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of thousands of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit Class members, the parties, and the courts.

101.   The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the Class members all purchased the Product, were deceived by the unlawful labeling, and lost money as a result, purchasing a Product that was illegal to sell in California and the United States.

102.   The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Product's retail purchase price, which is generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate such claims.

103.   Because Defendant's misrepresentations were made on the label of the Product, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendant can continue to deceive consumers and violate California and federal law with impunity.

104.   The proposed Class representative satisfies adequacy of representation. Plaintiff is an adequate representative of the Class as she seeks relief for the Class, her interests do not conflict with the interests of the Class members, and she has no interests

antagonistic to those of other Class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

105.   There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

106.   Questions of law and fact common to Plaintiff and the Class include:

a.   Whether Defendant failed to provide a legally-required "artificially flavored" disclosure on the Product label;

b.   Whether Defendant's labeling omissions and representations constituted false advertising under California law;

c.   Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

d.   Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

e.   Whether Defendant's label statements claiming fruit flavorings while omitting the use of artificial flavoring was an affirmative representation of the Product's composition and conveyed an express warranty;

f.   Whether Defendant's conduct constitutes a breach of implied warranties under California's Commercial Code;

g.   Whether the statute of limitations should be tolled on behalf of the Class;

h.   Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

i.   Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

107.   Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

FIRST AMENDED COMPLAINT

108.   Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

109.   Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

110.   Class damages will be adduced at trial through expert testimony and other competent evidence.

111.   On information and belief, based on publicly-available information, Plaintiff alleges that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated price premium and Product revenues for sales to the Class in California during the proposed Class Period, exceeds $5 million.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FRAUD BY OMISSION**

**Cal. Civ. Code §§ 1709-1710**

**and the common law of all states**

**(on behalf of the Nationwide Class and the California Class)**

112.   Plaintiff re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

113.   Plaintiff brings this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710, *et seq.* and the common law of all states. The elements of fraud are substantially similar from state to state, thus making nationwide class certification appropriate.

114.   Defendant omitted material facts, in whole or in part, with the intent to induce Plaintiff and the members of the Class to purchase the Product. Specifically, Defendant actively concealed the truth about the Product by failing to provide the legally-required "artificially flavored" disclosure on the front label of the Product as is required by California and federal law.

115.   Plaintiff and the Class were unaware of this omitted material fact and would not have purchased the Product, or would have paid less for the Product, if they had known

of the omitted fact.

116.   Plaintiff and the Class suffered injuries that were proximately caused by Defendant's omissions of material facts.

117.   Defendant's omissions were a substantial factor in causing the harm suffered by Plaintiff and the Class members as they would not have purchased the Product at all, or would have paid less for the Product, if all material facts were properly disclosed.

<u>**SECOND CAUSE OF ACTION**</u>

**NEGLIGENT MISREPRESENTATION**

**Cal. Civ. Code §§ 1709-1710**

**and the common law of all states**

**(on behalf of the Nationwide Class and the California Class)**

118.   Plaintiff re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

119.   Defendant had a duty to disclose to Plaintiff and the Class members its use of artificial flavoring ingredients on the front label of the Product pursuant to California and federal law. Defendant was in a superior position than Plaintiff and the Class members such that reliance by Plaintiff and the Class members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

120.   During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the products, including the use of artificial flavoring ingredients.

121.   Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and the Class members would not have realized the use of artificial flavoring ingredients in the Product.

122.   Plaintiff and the Class members were unaware of Defendant's unlawful misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

123.   Plaintiff and the Class members would not have purchased the Product, or

17

FIRST AMENDED COMPLAINT

would have paid less for the Product, if the true facts had been known.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

#### CAL. CIV. CODE §§ 1750, *et seq.*

#### (on behalf of the California Class)

124.   Plaintiff re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

125.   The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

126.   Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). The Products are a "good" as defined by Cal. Civ. Code § 1761.

127.   Defendant's failure to label the Product in compliance with federal and state labeling regulations, was an unfair, deceptive, unlawful, and unconscionable commercial practice.

128.   Defendant's conduct violates the CLRA, including but not limited to, the following provisions:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

129.   As a result of Defendant's violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the unlawfully labeled and marketed Product, which they would not have paid had the Product been labeled in accordance with federal and California law, and in the form of the reduced value of the Product purchased compared to the Product as labeled and advertised.

130.    On or about October 3, 2018, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendant which complies with California Civil Code § 1782(a). Plaintiff sent Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A copy of Plaintiffs' October 3, 2018 CLRA letter is attached hereto as **Exhibit 1**.

131.    More than thirty days have passed since Plaintiff sent Defendant her CLRA letter and Defendant has failed to take the corrective action described in Plaintiff's letter. Wherefore, Plaintiff seeks damages, restitution, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

## FOURTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (UNLAWFUL PRONG)
### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*
### (on behalf of the California Class)

132.    Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

133.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

134.    The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

135.    Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

136.    Among other violations, Defendant's conduct in unlawfully packaging and labeling and distributing the Product in commerce in California violated U.S. FDA and California packaging and labeling regulations.

FIRST AMENDED COMPLAINT

137.   The Product's front label fails to disclose that it contains synthetic artificial flavoring in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

138.   The Product contains fumaric acid.

139.   The fumaric acid is an artificial flavoring material, and is included in the Product to create, simulate and reinforce the characterizing fruit flavors.

140.   The fumaric acid in the Product is not derived from a natural source as defined in 21 C.F.R. § 101.22 and is therefore by law an artificial flavor.

141.   Defendant fails to inform consumers of the presence of artificial flavors in the Product on the front label as required by law.

142.   Defendant's practices are therefore unlawful under Section 17200 *et seq.* of the California Civil Code.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (UNFAIR PRONG)
### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*
### (on behalf of the California Class)

143.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

144.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice." Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

145.   Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

146.   While Defendant's decision to label the Product deceptively and in violation of California law may have some utility to Defendant in that it allows Defendant to sell the Product to consumers who otherwise would not purchase an artificially-flavored food product at the premium retail price, or at all, if it were labeled correctly, and to realize

20

FIRST AMENDED COMPLAINT

higher profit margins than if it formulated or labeled the Product lawfully, this utility is small and far outweighed by the gravity of the harm inflicts upon California consumers.

147. Defendant's conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unlawful, unfair, and unethical behavior.

148. Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

149. Plaintiff's and all California class members' purchases of the Product took place in California.

150. Defendant labeled the Product in violation of federal regulations and California law requiring truth in labeling.

151. Defendant consciously failed to disclose material facts to Plaintiff and the Class in Defendant's advertising and marketing of the Product.

152. Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

153. Defendant's conduct is also "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently and conspicuously on the product's front label.

154. Defendant intended that Plaintiff and the Class rely on Defendant's acts and omissions to induce them to purchase the Product.

155. Had Defendant disclosed all material information regarding the Product, Plaintiff and the Class would not have purchased the Product or would only have been

21

willing to pay less for the Product than they did.

156.   Plaintiff and the Class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they purchased the Product based on Defendant's violation of the applicable laws and regulations, and purchased the Product in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

157.   The acts, omissions, and practices of Defendant detailed herein proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Product, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

158.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

159.   Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to return to the Class the amount of money improperly collected.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE FALSE ADVERTISING LAW
#### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*
#### (on behalf of the California Class)

160.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

161.   Defendant manufactured, packaged, labeled, advertised, and distributed, in California and in interstate commerce, a Product that unlawfully failed to disclose the presence of artificial flavoring as required by federal and state food labeling regulations.

162.   Under California's False Advertising Law ("FAL"), Business and Professions

22

Code   § 17500 *et seq.*,

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code § 17500.

163.   Defendant's labeling and advertising statements on the Product's labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

164.   Defendant's labeling and advertising statements, omitting from consumers that the Product contains a synthetic artificial flavor, were unlawful and misleading, and Defendant at a minimum by the exercise of reasonable care should have known those actions were unlawful or misleading.

165.   Defendant's conduct violated California's False Advertising Law.

<u>**SEVENTH CAUSE OF ACTION**</u>

**BREACH OF EXPRESS WARRANTIES**

**CAL. COMM. CODE § 2313**

**(on behalf of the California Class and all states with substantially similar laws)**

166.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

167.   The Product's front label misleadingly claims by operation of California law that the Product is flavored only with the listed characterizing flavors.

168.   The Product's front label fails to disclose the use of artificial flavoring, "immediately and conspicuously preced[ing] or follow[ing]" the names of the characterizing flavors, as required by law. *See* 21 C.F.R. 101.22(i)(3).

169.   The failure to disclose the use of artificial flavoring on the Product's front

23

label, by operation of law, informs consumers that the Product does not contain artificial flavors.

170. Starbucks' health and wellness campaign further reinforced reasonable consumers' beliefs that the Product did not contain artificial flavors.

171. These promises became part of the basis of the bargain between the parties and thus constituted express warranties, which Defendant breached. The Product does not solely contain apple, watermelon, tangerine, and lemon flavors as the label suggests – it contains *artificial* apple, watermelon, tangerine, and lemon flavors.

172. Defendant sold the good to Plaintiff and Class members who bought the good from Defendant.

173. As a result, Plaintiff and the Class did not receive the good as warranted by Defendant.

174. Within a reasonable amount of time after Plaintiff discovered that the Product contained synthetic ingredients, Plaintiff notified Defendant of such breach.

175. As a proximate result of this breach of warranty by Defendant, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## EIGHT CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTIES

#### CAL. COMM. CODE § 2314

**(on behalf of the California Class and all states with substantially similar laws)**

176. Plaintiff re-alleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

177. Defendant's label representations also created implied warranties that the product was suitable for a particular purpose, specifically as a snack product containing no artificial flavors, and created implied warranties by operation of California statute.

178. Defendant breached these warranties.

179. Because the Product does not contain an "artificially flavored" disclosure as required by law, the Product's front label misleadingly implies that the Product is not flavored with artificial ingredients.

180.   As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiff, as well as all members of the Class, intended to use the Product as a food product that did not contain artificial flavoring.

181.   This became part of the basis of the bargain between the parties.

182.   Based on that implied warranty, Defendant sold the goods to Plaintiff and other Class members who bought the goods from Defendant.

183.   At the time of purchase, Defendant knew or had reason to know that Plaintiff and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiff and the Class justifiably relied on Defendant's skill and judgment.

184.   The Product was not suitable for this purpose.

185.   Plaintiff purchased the Product believing it had the qualities Plaintiff sought, based on the deceptive advertising and labeling, but the Product was actually unsatisfactory to Plaintiff for the reasons described herein.

186.   Further, the Product was not merchantable in California because it was not of the same quality as other products in the category generally acceptable in the trade.

187.   The Product would not pass without objection in the trade when packaged with the existing labels, because the Product was illegal to sell in California. Cal. Comm. Code 2314(2)(a).

188.   The Product also was not acceptable commercially and breached its implied warranty because the Product was not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

189.   The Product also was not commercially acceptable and breached its implied warranty because it did not conform to the implied promises made on the container or label, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

190.   By offering the Product for sale and distributing the Product in California, Defendant also warranted that the Product was not unlawful and was legal to purchase in California. Because the Product was unlawful and was therefore illegal to sell or offer for

25

FIRST AMENDED COMPLAINT

sale in California, Defendant breached this warranty as well.

191.   As a result of this breach, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant.

192.   Within a reasonable amount of time after the Plaintiff discovered that the Product contained synthetic flavoring ingredients, Plaintiff notified Defendant of such breach.

193.   As a proximate result of this breach of warranty, Plaintiff and the Class have been damaged in an amount to be determined at trial.

194.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## VIII.   <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, pray for judgment against Defendant as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above;

B.   An order appointing Plaintiff as class representative and The Law Office of Ronald A. Marron as counsel for the Class;

C.   An order requiring Defendant to bear the cost of Class notice;

D.   An order declaring that the conduct complained of herein violates the CLRA;

E.   An order declaring that the conduct complained of herein violates the UCL;

F.   An order declaring that the conduct complained of herein violates the FAL;

G.   An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H.   An order requiring Defendant to disgorge any benefits received from Plaintiff and any unjust enrichment realized as a result of the unlawful and deceptive labeling, advertising, and marketing of the Product;

I.   An order requiring Defendant to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired

by means of any unfair, deceptive, unconscionable or negligent acts;

J.      An award of punitive damages in an amount to be proven at trial;

K.      An order enjoining Defendant's unlawful and unfair practices;

L.      An order requiring Defendant to conduct corrective advertising;

M.      An award of pre-judgment and post-judgment interest;

N.      An award of attorney fees and costs; and

O.      Such other and further relief as this Court may deem just, equitable, or proper.

## IX.    <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.


DATED: March 15, 2019              Respectfully Submitted,


                                   */s/ Ronald A. Marron*
                                   Ronald A. Marron

                                   **LAW OFFICES OF RONALD A. MARRON**
                                   Ronald A. Marron
                                   *ron@consumersadvocates.com*
                                   Michael T. Houchin
                                   *mike@consumersadvocates.com*
                                   651 Arroyo Drive
                                   San Diego, CA 92103
                                   Telephone: (619) 696-9006
                                   Fax: (619) 564-6665
                                   ***Counsel for Plaintiff and the Proposed Class***

FIRST AMENDED COMPLAINT