1  Paul W. Sweeney, Jr. (SBN 112511)
   paul.sweeney@klgates.com
2  Kevin S. Asfour (SBN 228993)
   kevin.asfour@klgates.com
3  Kate G. Hummel (SBN 305783)
   kate.hummel@klgates.com
4  **K&L GATES LLP**
   10100 Santa Monica Boulevard
5  Eighth Floor
   Los Angeles, CA  90067
6  Telephone: +1 310 552 5000
   Facsimile: +1 310 552 5001
7
   Attorneys for Defendants
8  STARBUCKS CORPORATION

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11  SANDRA BROWN, an individual, on          Case No.: 3:18-cv-02286-JM-WVG
    behalf of herself, all others similarly
12  situated, and the general public         [Assigned to the Hon. Jeffrey T. Miller;
                                             Mag. Judge William V. Gallo ]
13                        Plaintiff,
                                             **DEFENDANT STARBUCKS**
14  vs.                                      **CORPORATION'S**
                                             **MEMORANDUM OF POINTS AND**
15  STARBUCKS CORPORATION, a                 **AUTHORITIES IN SUPPORT OF**
    Washington Corporation                   **MOTION TO DISMISS**
16                                           **PLAINTIFF'S FIRST AMENDED**
                          Defendant.         **COMPLAINT, OR IN THE**
17                                           **ALTERNATIVE, TO STRIKE THE**
                                             **NATIONWIDE CLASS**
18                                           **ALLEGATIONS**

19                                           Hearing Date:   May 13, 2019
20                                           Time:           10:00 a.m.
                                             Location:       Courtroom 5D
21                                                           Suite 5190
                                                             221 West Broadway
22                                                           San Diego, CA 92101

23                                           Complaint filed: October 3, 2018
                                             Trial date:      N/A
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................. 1

II.  PROCEDURAL HISTORY & SUMMARY OF ALLEGATIONS ................ 2

    A.  Plaintiff's Original Complaint ......................................... 2

    B.  The Court Grants Starbucks' Motion to Dismiss Plaintiff's Complaint ......................................................................... 3

    C.  Plaintiff Files Her First Amended Complaint ........................ 3

III.  LEGAL STANDARDS GOVERNING THE MOTION ..................... 5

IV.  THE FAC FAILS TO STATE ANY CLAIM AND SHOULD BE DISMISSED IN ITS ENTIRETY ............................................. 6

    A.  All of Plaintiff's Claims Are Deficient Because the FAC Fails to Identify Any Actionable Misrepresentation on the Gummies' Packaging ................................................................ 6

    B.  Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter of Law ........ 8

        1.  Plaintiff Lacks Standing Under the FAL, CLRA, and UCL ........ 9

        2.  No Reasonable Consumer Could Plausibly Be Deceived by the Product's Packaging ............................................. 10

            i.  No allegations establishing "literally false" statements ... 11

            ii.  No allegations establishing common sense conclusion ... 11

            iii.  No allegations establishing front-back dichotomy........... 13

            iv.  No allegations establishing misleading brand name ........ 15

    C.  Plaintiff's Express Warranty Claim Fails as a Matter of Law ............. 16

    D.  Plaintiff's Implied Warranty Claim Fails as a Matter of Law ............. 17

    E.  Plaintiff's Common Law Fraud and Negligent Misrepresentation Claims Fail as a Matter of Law .................................................. 17

        1.  Fraud by Omission........................................................ 17

        2.  Negligent Misrepresentation........................................ 18

V.  STARBUCKS IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA FOR CLAIMS OF NON-CALIFORNIA RESIDENTS........ 19

VI.  EVEN IF *ARGUENDO* STARBUCKS IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA FOR NON-CALIFORNIA RESIDENTS' CLAIMS, THE COURT SHOULD STRIKE OR DISMISS THE NATIONWIDE CLASS ALLEGATIONS ........................... 22

A.     The Procedural Bases for Eliminating Nationwide Class Claims ........ 23

B.     A Nationwide Class Is Legally Inappropriate for Plaintiff's Claims ... 24

VII.   CONCLUSION ................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re 5-hour ENERGY Marketing and Sales Practices Litig.*,
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................................... 15

6

7

*In re Actimmune Mktg. Litig.*,
2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 Fed. Appx.

8

651 (9th Cir. 2011) ................................................................................................... 9

9

*Allred v. Frito-Lay N. Am., Inc.*,
2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ........................................................... 12

10

11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 5

12

13

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 969 (9th Cir. 1988) ..................................................................................... 5

14

15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 5

16

17

*Bigler-Engler v. Breg, Inc.*,
7 Cal. App. 5th 276 (2017) ...................................................................................... 18

18

19

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ................................................................................. 20

20

21

*Brady v. Bayer Corporation*,
26 Cal. App. 4th 1156 (2018) ...................................................................... 11, 13, 15

22

23

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) ................................................................................. 20, 21, 22

24

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ............................................................................ 11

25

26

*Byrum v. Brand*,
219 Cal. App. 3d 926 (1990) ................................................................................... 19

27

28

*Clark v. LG Elecs. U.S.A., Inc.*,
2013 WL 5816410 (S.D. Cal. 2013) .................................................................. 23, 24

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..........................................................................................20

*Darisse v. Nest Labs, Inc.*,
   2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ................................................24, 25

*In re Dental Supplies Antitrust Litig.*,
   2017 WL 4217115 (E.D.N.Y. 2017) ........................................................................21

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .................................................................................9

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ...................................................................................10

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) .................................................................................23

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014).....................................................................12

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
   2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)........................................................22

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014)................................................................24, 25

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).................................................................................................23

*Greene v. Mizuho Bank, Ltd.*,
   289 F. Supp. 3d 870 (N.D. Ill. 2017).................................................................21, 22

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017)...................................................................11

*Horowitz v. AT&T Inc.*,
   2018 WL 1942525 (D.N.J. Apr. 25, 2018)..............................................................22

*Hovsepian v. Apple, Inc.*,
   2009 WL 5069144 (N.D. Cal. 2009) .......................................................................23

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ............................................................................................10

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ................................................................. 10

*Lopez v. Nissan N. Am. Inc.*,
    201 Cal. App. 4th 572 (2011) ................................................................. 19

*Maclin v. Reliable Reports of Texas, Inc.*,
    314 F. Supp. 3d 845 (N.D. Ohio 2018) .................................................. 22

*Maxwell v. Unilever United States, Inc.*,
    2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ................................. 10, 14

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (9th. Cir. 2012) ........................................................... 24, 25

*Muir v. Nature's Bounty (DE), Inc.*,
    2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ........................................... 22

*Mussat v. IQVIA, Inc.*,
    2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) .......................................... 22

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .................................................................... 5, 6

*Practice Mgmt. Support Svcs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) .................................................... 21

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ....................................... 12

*Roberts v. Wyndham Int'l, Inc.*,
    2012 WL 6001459 (N.D. Cal. 2012) ............................................... 23, 24

*Robinson v. Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ........................................................................... 19

*Roy v. FedEx Ground Package System, Inc.*,
    353 F. Supp. 3d 43 (D. Mass. 2018) ..................................................... 22

*In re Safeway Tuna*,
    2016 WL 3743364 (N.D. Cal. July 13, 2016) ....................................... 19

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................. 23

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................. 18

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................... 13

*Strumlauf v. Starbucks Corp.*,
    2016 WL 331842 (N.D. Cal. June 17, 2016) ........................................... 19

*Summit Technology, Inc. v. High-Line Med. Instruments Co., Inc.*,
    922 F. Supp. 299 (C.D. Cal. 1996) ....................................................... 5, 6

*Swearingen v. Santa Cruz Natural, Inc.*,
    2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ......................................... 19

*Tasion Comms., Inc. v. Ubiquiti Networks, Inc.*,
    2014 WL 1048710 (N.D. Cal. Mar. 4, 2014) ..................................... 23, 24

*Thomas v. Costco Wholesale Corp.*,
    2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ............................................. 9

*Trazo v. Nestle USA, Inc.*,
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ........................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 6

*Victor v. R.C. Bigelow, Inc.*,
    2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ......................................... 13

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................... 13

*In re Vizio, Inc., Consumer Privacy Litigation*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................. 19

*Wenokur v. AXA Equitable Life Ins. Co.*,
    2017 WL 4357916 (D. Ariz. Oct. 2, 2017) .............................................. 22

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981) ............ 6

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) .......................................................... 10, 14

*Wilson v. Century 21 Great Western Realty*,
    15 Cal. App. 4th 298 (1993) ................................................................... 19

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .................................................. 12

*Wyler Summit P'ship v. Turner Broad. System, Inc.*,
    135 F.3d 658 (9th Cir. 1998) ..................................................................... 6

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................... 8

Cal. Bus. & Prof. Code § 17500 ....................................................................... 8

Cal. Bus. & Prof. Code § 17535 ....................................................................... 9

Cal. Civ. Code § 1750 *et seq.* .......................................................................... 8

Cal. Civ. Code § 1770(a)(5) .............................................................................. 8

Cal. Civ. Code § 1770(a)(7) .............................................................................. 8

Cal. Civ. Code § 1770(a)(9) .............................................................................. 8

Cal. Civ. Code § 1770(a)(16) ............................................................................ 8

Cal. Com. Code § 2313 .............................................................................. 4, 16

Cal. Com. Code § 2314 ....................................................................................... 4

Cal. Com. Code § 2314(2) ............................................................................... 17

Cal. Health & Safety Code § 110740 .............................................................. 10

U.S. Food Drug and Cosmetic Act ............................................................... 3, 8

**Other Authorities**

21 C.F.R. § 101.11 ................................................................................... 1, 4, 12

21 C.F.R. § 101.22(i)(2) .............................................................................. 1, 10

Fed. R. Civ. P. 9(b) ........................................................................... 5, 6, 9, 18

Fed. R. Civ. P. 12(b)(2) .................................................................................. 20

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5, 23

Fed. R. Civ. P. 12(f) ...................................................................................... 23

Fed. R. Civ. P. 23 .......................................................................................... 23

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................... 23

L. Civ. R. 23.1(b) .......................................................................................... 25

# I.  INTRODUCTION

In the second iteration of her putative class action complaint, Plaintiff alleges no new material facts that would cure the deficiencies deemed fatal to her prior pleading.  Indeed, Plaintiff's First Amended Complaint ("FAC") advances the same causes of action based on the same, immaterially revised, or completely irrelevant allegations.  Specifically, Plaintiff still alleges that Starbucks engaged in false and deceptive advertising regarding its private-label product "Starbucks Sour Gummies" (the "Gummies") by failing to include an "artificially-flavored" disclosure on the Gummies' front packaging, which Plaintiff contends is required by state and federal regulations due to the presence of the allegedly artificial ingredient "fumaric acid."[1] And as before, Plaintiff claims she relied on "the omission of the fact that this [p]roduct contained artificial flavoring" on the front packaging to conclude that the Gummies "implied" that it "did not contain artificial flavors."  (FAC ¶¶ 82, 189.)

Plaintiff, however, still does not identify a single statement on the Gummies' packaging that represents the Gummies contain "no artificial flavors."  Likewise, Plaintiff still does not (and cannot) contend that Starbucks made other representations that would affirm, promise or warrant that the Gummies are "all-natural" or contain "no artificial ingredients."  Instead, Plaintiff quotes from the same section of the Code of Federal Regulations that she relied upon as the centerpiece of her original complaint, *i.e.*, 21 C.F.R. § 101.11 (FAC ¶¶ 8, 10-11, 13), offers an assortment of legal conclusions (FAC ¶¶ 14, 15, 16, 36, 38), and reiterates the same generalized conclusions about consumer preferences for "natural foods" and Starbucks' "health and wellness campaign" that she included in her original complaint, and which ultimately bear no relation to the Gummies or claims at issue (FAC ¶¶ 25-26, 29, 62,

---

[1] Starbucks does not concede that FDA regulations impose such a requirement here. Among other things, whether that regulatory requirement applies turns upon whether fumaric acid "simulates, resembles or reinforces" the particular fruit flavors identified on the Product's packaging. *See* 21 C.F.R. § 101.22(i)(2). This is an evidentiary issue that Plaintiff must prove (if the case were to survive dismissal).  For the purposes of this Motion, however, Starbucks assumes that the requirement applies—but as detailed herein, even with the benefit of that assumption Plaintiff's claims still fail.

63, 65).  Granted, Plaintiff has eliminated all previous allegations that Starbucks deceived its consumers "by operation of California law"; however, in the absence of any new, material allegations, Plaintiff's theory of liability remains the same—Starbucks engaged in fraud and deception by allegedly violating a labeling regulation. As the Court already noted, such a theory cannot, without more, carry Plaintiff's claims.  (*See* DE No. 14 at p. 8:8-16.)  And since Plaintiff's FAC fails to plead any additional statements, representations, or disclosures regarding the Gummies' contents or packaging, Plaintiff cannot plausibly establish (i) that a reasonable consumer would be misled by the Gummies' packaging, (ii) that Starbucks promised, as a basis of the parties' bargain, that the Gummies would not contain artificial ingredients, (iii) that Starbucks warranted the Gummies were fit for the specific purpose of a food product free from artificial ingredients, or (iv) that Starbucks made any affirmative representation regarding the Gummies' contents other than what is set forth on the package.  Thus, because Plaintiff has demonstrated she cannot cure her defective claims, the Court should dismiss Plaintiff's FAC with prejudice.

In addition, Plaintiff's attempt to assert certain claims on behalf of a nationwide class is legally untenable, given (i) Starbucks is not subject to personal jurisdiction in this Court for the claims of non-California residents; and (ii) the multiplicity of different state laws that would govern a nationwide class action here, in any event. Thus, even if the Court is inclined to allow one or more claims to proceed (which it should not do), the Court should eliminate the nationwide class allegations.

## II.    PROCEDURAL HISTORY & SUMMARY OF ALLEGATIONS

### A.    Plaintiff's Original Complaint

Plaintiff originally filed this consumer protection putative class action against Starbucks on October 3, 2018.  (Docket Entry ("DE") No. 1.)  In her complaint, Plaintiff alleged that Starbucks engaged in false and deceptive advertising regarding its Gummies product.  (*Id*. at ¶¶ 7, 19.)  Specifically, Plaintiff alleged that the "fumaric acid" ingredient found in the Gummies is an "artificial flavor" as defined by

2

California's Sherman Law and the U.S. Food Drug and Cosmetic Act ("FDCA"). Plaintiff contended that the Gummies' packaging was misleading, because Starbucks did not prominently state that the Gummies were "artificially flavored," which Plaintiff alleged was required under California's Sherman Law and the FDCA.  (*Id.* at ¶¶ 48, 54-55.)  Based on this theory, Plaintiff advanced statutory claims under California's False Advertising Law, Unfair Competition Law, Consumer Legal Remedies Act, Commercial Code sections 2313 and 2314, and common law claims for fraud and negligent misrepresentation.

**B.    The Court Grants Starbucks' Motion to Dismiss Plaintiff's Complaint**

On November 29, 2018, Starbucks moved to dismiss Plaintiff's Complaint. (DE No. 8.)  On March 1, 2019, the Court granted Starbucks' motion and dismissed Plaintiff's Complaint in its entirety.  (DE No. 14.)  In so ruling, the Court issued a thorough opinion, identifying multiple defects in Plaintiff's claims, including, *inter alia*, (i) "fail[ure] to plausibly allege that a reasonable consumer would be misled by the Gummies' packaging" (*see id.* at p. 6:8-9), (ii) failure to "plausibly allege that Starbucks promised, as a basis of the parties' bargain, that the Gummies would not contain artificial ingredients" (*see id.* at 9:11-13), (iii) failure to "plausibly allege that Starbucks warranted the Gummies were fit for the specific purpose of 'naturally-flavored food product'" (*see id.* at 9:20-21), and (iv) "fail[ure] to allege any affirmative representation by Starbucks" (*see id.* at 10:13-14).  Because it was "not entirely clear that an amendment would be futile," however, the Court granted Plaintiff leave to amend.  (*Id.* at p. 10.)

**C.    Plaintiff Files Her First Amended Complaint**

On March 15, 2019, Plaintiff filed her FAC.  (DE No. 15.)  In her FAC, Plaintiff asserts the same causes of action based upon the same deficient facts.  (*Id.*) Like her prior pleading, Plaintiff advances statutory claims under California's False Advertising Law, Unfair Competition Law, Consumer Legal Remedies Act,

1   Commercial Code sections 2313 and 2314, and common law claims for fraud and

2   negligent misrepresentation.  (*Id.*)  And like her prior pleading, Plaintiff challenges the

3   veracity of the Gummies' packaging based solely upon the absence of the purportedly

4   "legally-required 'artificially flavored' disclosure."  (*Id.* at ¶¶ 6-18.)

5        As set forth in the FAC, the front of the Gummies' package displays the name

6   "Starbucks Sour Gummies" and describes the contents as "[a]pple, watermelon,

7   tangerine and lemon flavored candies."  (*Id.* ¶ 31, Figure 1.)  The information panel on

8   the back portion of the Gummies' packaging includes a list of ingredients, which

9   include "sugar, cornstarch, fumaric acid, citric acid, fruit juice concentrates (tangerine,

10  apple, lemon), pectin, sodium citrate, color added (saffron, annatto, vegetable and

11  spirulina extracts), natural flavors."  (*Id.* at ¶ 32, Figure 2.)  The Gummies' packaging

12  is also transparent, thereby fully revealing the brightly colored, sugar-encrusted,

13  gelatinous candies.  (*Id.*)

14       In her FAC, Plaintiff still does not (and cannot) allege that the Gummies'

15  packaging states that the Gummies are "all natural," contain "no artificial flavors" or

16  contain "no artificial ingredients."  Plaintiff still does not (and cannot) plausibly allege

17  that the statement the Gummies are "[a]pple, watermelon, tangerine and lemon

18  flavored candies" is false.  And Plaintiff still does not (and cannot) allege that

19  Starbucks otherwise represents or promises that the Gummies do not contain artificial

20  ingredients or are a "naturally-flavored food product."  In fact, the only substantive

21  differences between Plaintiff's original Complaint and her FAC are: (i) additional

22  quotes from the same section of the Code of Federal Regulations that Plaintiff cited

23  extensively in her original complaint, *i.e.*, 21 C.F.R. § 101.11 (*see* FAC ¶¶ 8, 10-11,

24  13); (ii) an image of the Gummies' back packaging (which the Court had already

25  judicially noticed in ruling on Defendant's motion to dismiss the original complaint[2])

26  (*see* FAC ¶ 32, Figure 2); (iii) added or revised legal conclusions (*see, e.g.*, FAC ¶¶

27  14, 15, 16, 36, 38); and (iv) an additional quote relating to the alleged "health and

28

---

[2] *See* DE No. 14 at p. 2:15-19, 2:24-27.

wellness campaign" theory Plaintiff pursued in her original complaint—and which, like her prior allegations in this regard, has absolutely nothing to do with the Gummies product (*see id.* at ¶ 29 (referencing quote about "gluten-free and vegan" products); *see also* ¶¶ 63, 65 (vague "consumer belief" allegations)).

In short, Plaintiff alleges no additional **material** facts.  Instead, Plaintiff maintains the same, single theory of liability by way of subtly revised allegations—that she and other consumers were deceived by operation of law.  (FAC ¶¶ 8, 10-15, 36-37, 65.)  As detailed below, these revisions do not cure Plaintiff's deficient claims.

## III.   LEGAL STANDARDS GOVERNING THE MOTION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  Dismissal is proper "where there is either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 969, 699 (9th Cir. 1988)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above a speculative level."  *Id.*  Indeed, a complaint must be dismissed unless it includes sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted).

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  In

5

order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received and other details of the alleged fraudulent activity." *Id.* at 672.  Importantly, where, as here, "the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that complaint." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

In ruling on a motion to dismiss, a court must accept as true the well-pleaded factual allegations of the complaint.  *See, e.g., Wyler Summit P'ship v. Turner Broad. System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (*citing Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

## IV.   THE FAC FAILS TO STATE ANY CLAIM AND SHOULD BE DISMISSED IN ITS ENTIRETY

### A.   All of Plaintiff's Claims Are Deficient Because the FAC Fails to Identify Any Actionable Misrepresentation on the Gummies' Packaging

As with Plaintiff's original complaint, Plaintiff's FAC does not include sufficient factual allegations that would establish the Gummies' packaging contains an actionable misrepresentation.  Indeed, Plaintiff does not—and cannot—allege that Starbucks or the Gummies' packaging makes any claim that the candies have "no artificial flavors" or "no artificial ingredients."  Instead, Plaintiff's allegations remain the same: the Gummies' packaging consists only of (i) the name "Starbucks Sour Gummies," (ii) the words "[a]pple, watermelon, tangerine and lemon flavored candies," and (iii) an ingredient list that truthfully discloses the presence of "fumaric acid" and other ingredients.  (FAC ¶ 31, Figure 1; ¶ 32, Figure 2.)  None of these statements is alleged to be a misrepresentation.  (*See* DE No. 14 at pp. 6-10.)   In an attempt to cure her original allegations, Plaintiff eliminated her contention that the presence of artificial flavoring was "implied."  However, in eliminating such

references, she inadvertently **added** similar language elsewhere in the FAC.  (*See, e.g.,* ¶ 189 ("The Product was also not commercially acceptable and breach its implied warranty because it did not conform to the implied promises made on the container or label.").)  Thus, Plaintiff again confirms that there is nothing in the packaging or in Starbucks advertising that states Gummies have no artificial flavoring.

Plaintiff also slightly expands upon her allegations relating to Starbucks' alleged "health and wellness campaign."  Yet, like her prior pleading, these new allegations bear no connection to the Gummies or the claims at issue.  Specifically, Plaintiff now alleges that "[i]n conformity with its health and wellness campaign, Starbucks markets its snack food options to those seeking healthier options.  For example, as part of its expanded snack options, Starbucks offers 'packaged snacks' as '**a great opportunity to expand our offering to those with specific dietary needs, like gluten-free and vegan**.'" (FAC ¶ 29 (emphasis added).)  Plaintiff has also added conclusory assertions, such as "[a]fter running a health and wellness campaign, Starbucks would have consumers believe that its products are healthier than others" and that "consumers belie[ve] that Defendant's products are healthier than others." (*Id.* ¶¶ 63, 65.)  Thus, the only new "fact" that Plaintiff alleges in this regard is a generalized quote relating to "gluten-free and vegan" products—yet there is no allegation in the FAC that the Gummies are marketed as "gluten-free" or "vegan."

Not only do these new allegations fail to establish any actionable misrepresentation upon which Plaintiff could base her claims, but they only further highlight the faulty premise upon which her putative class action relies—that in the pursuit of health and wellness, Plaintiff and other consumers elected to purchase Starbucks Sour Gummies . . . sugar-crusted candy.

In the absence of any newly pleaded material facts, Plaintiff is left with the same, single theory of liability articulated (and rejected) in her prior pleading—that Plaintiff was deceived by operation of law.  (*See* FAC ¶¶ 8, 10-15, 36-37, 65.)  As before, Plaintiff claims that Starbucks engaged in fraud and deception, because it

allegedly failed to follow an FDCA regulation incorporated by California's Sherman Law by not including the words "artificially flavored" on the Gummies' packaging. And as before, Plaintiff is faced with the same dilemmas: (1) a theory deemed implausible based on the same, alleged facts, and (2) the absence of any California legal authority that suggests failure to use the words "artificially flavored" on a product's package constitutes a false or deceptive act or breach of warranty, sufficient to support a private right of action by a consumer, where (i) no representation is made (by statement, image or otherwise) that the product is "all-natural," has "no artificial flavors" and (ii) where the contents of the product are fully disclosed on the package and fully visible to the consumer.  Because Plaintiff has shown that she cannot plausibly plead any actionable misrepresentation—which cuts across Plaintiff's entire FAC—or a legally tenable theory of liability, the Court should dismiss all of Plaintiff's claims without further leave to amend.

**B.    Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter of Law**

Plaintiff once again asserts claims under various California consumer protection statutes, namely, the Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code §§ 17200 *et seq*.), False Advertising Law ("FAL," Cal. Bus. & Prof. Code §§ 17500 *et seq*.) and Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code §§1750 *et seq*.).

Like her prior pleading, Plaintiff asserts that because the ingredient list on the Gummies' packaging indicates that the candy contains "fumaric acid," which Plaintiff alleges is an artificially synthesized chemical ingredient, Starbucks was required by regulations to state "artificially flavored" on the front of the package.  (FAC ¶¶ 8, 10-15, 36-37, 65.)  Failure to do so, according to Plaintiff, violates (i) the FAL's prohibition of "untrue and misleading" advertising (*see* Cal. Bus. & Prof. Code § 17500), (ii) various provisions of the CLRA prohibiting misrepresentation of a product's characteristics (*see* Cal. Civ. Code §§ 1770(a)(5), (7), (9), (16)), and (iii) the "unlawful" and "unfair" prongs of the UCL (*see* FAC. ¶¶ 135, 145).  As detailed below, all of Plaintiff's consumer deception claims fail as a matter of law.

1                **1.**       **Plaintiff Lacks Standing Under the FAL, CLRA, and UCL**

2         To have standing under the FAL and CLRA, a plaintiff must allege that she

3 relied on the defendant's alleged misrepresentation and suffered economic injury as a

4 result.  *See, e.g.*, Cal. Bus. & Prof. Code § 17535 (a plaintiff must have "suffered

5 injury in fact and ha[ve] lost money or property as a result of a violation of this

6 chapter"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (CLRA

7 claim failed because plaintiff failed to allege facts showing he "relied on any

8 representation by" defendant).  In addition, for claims under the UCL's unlawful and

9 unfair prongs based on misrepresentation or deception, a plaintiff must plead actual

10 reliance to have standing.  *See, e.g.*, *In re Actimmune Mktg. Litig.*, 2010 WL 3463491,

11 at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011).

12       Under Rule 9(b), Plaintiff must allege "**which** parts of the labeling [she] read

13 and "**how** she relied on the statements" at issue to survive dismissal.  *Thomas v.*

14 *Costco Wholesale Corp.*, 2013 WL 1435292, at *9 (N.D. Cal. Apr. 9, 2013) (emphasis

15 added).  Like her prior pleading, Plaintiff alleges that she "relied" on the **omission** of

16 a statement regarding artificiality.  (FAC ¶ 82.)  And like her prior pleading, Plaintiff

17 claims this **omission** is deceptive, because it "misleadingly implies" (FAC ¶ 179) or

18 "suggests" (FAC ¶ 171) the Gummies have no artificial ingredients.

19         Such an allegation is deficient under Rule 9(b).  As before, Plaintiff's alleged

20 reliance is her own unique interpretation about what the statements on the Gummies'

21 packaging allegedly meant to her.  Indeed, Plaintiff's FAC does not allege any new

22 facts that would establish with particularity which allegedly unlawful **statements** she

23 purportedly relied upon when purchasing the Gummies and how she relied upon those

24 statements.  Nor does Plaintiff's FAC explain how Plaintiff could have read the words

25 "fumaric acid" in addition to "citric acid," "sodium citrate" and "color added" and

26 been led to believe that the Product contained no artificial ingredients.  Accordingly,

27 because Plaintiff fails to identify any allegedly false, deceptive or misrepresentative

28 statements, or plead plausible facts demonstrating reasonable "reliance" on same, she

MEMORANDUM OF POINTS AND AUTHORITIES - 18CV02286

fails to meet the UCL's, FAL's, and CLRA's respective statutory standing requirements.  *See, e.g.*, *Maxwell*, 2018 WL 1536761, at *6 (dismissing consumer deception claims as implausible where plaintiff failed to explain how she could have read the words "phosphoric acid" and "citric acid" (or otherwise read the product's label) and had been led to believe that the product did not contain artificial flavors).

### 2. No Reasonable Consumer Could Plausibly Be Deceived by the Product's Packaging

False advertising claims under the FAL, the CLRA, and the unfair prong of the UCL are governed by the "reasonable consumer" standard.  *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).  The "reasonable consumer" standard requires a plaintiff to show that "members of the public are likely to be deceived."  *Williams*, 552 F.3d at 938.  As the Ninth Circuit has explained, the "reasonable consumer" standard "requires more than a mere possibility that [Defendant's] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie*, 105 Cal. App. 4th at 508.  Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

Like her prior Complaint, Plaintiff's theory of liability revolves around a single alleged fact: Starbucks listed "fumaric acid" as an ingredient, but did not identify it on the Product's packaging as an "artificial flavor."  (FAC ¶¶ 33-44.)  Plaintiff claims this constitutes an "unlawful" business practice under the UCL because it violates laws and regulations, including California Health & Safety Code section 110740 and Code of Federal Regulations title 21, section 101.22.  (*Id.*)  Plaintiff also claims this omission misled consumers into believing that the Product did not "contain artificial flavors" (*id.* ¶¶ 82, 85), thereby violating the FAL, CLRA, and unfair and unlawful prongs of the UCL.  (*Id.* ¶¶ 124-165.)  All of the foregoing claims are governed by the

10

1   "reasonable consumer" standard.[3]

2        In its March 1, 2019 Order (DE No. 14), the Court found that Plaintiff's original

3   Complaint failed to plausibly allege that a reasonable consumer would be misled by

4   the Gummies' packaging under the four themes of "reasonable consumer"

5   jurisprudence discussed in *Brady v. Bayer Corporation*, 26 Cal. App. 4th 1156, 1172

6   (2018). For the same reasons identified therein, Plaintiff's FAC fails to plausibly

7   establish that a reasonable consumer would be deceived by the Gummies' packaging.

8               i.    *No allegations establishing "literally false" statements*

9        First, like her prior pleading, Plaintiff does not allege that the packaging

10  contains any "literally false" statements. *Brady*, 26 Cal. App. 4th at 1172. Indeed,

11  Plaintiff does not (and cannot) allege that the statement "[a]pple, watermelon,

12  tangerine and lemon flavored candies" on the Gummies' packaging is false. Likewise,

13  Plaintiff does not (and cannot) allege that the Gummies' packaging states "no artificial

14  flavors," "no artificial ingredients," "all natural flavors," or "all natural ingredients."

15  Finally, plaintiff does not (and cannot) allege that Starbucks made any representations

16  outside the four corners of the Gummies' packaging that would indicate the candy is

17  "all natural" or has "no artificial ingredients." Thus, Plaintiff's FAC fails to satisfy

18  the first theme of the "reasonable consumer" test.

19              ii.   *No allegations establishing common sense conclusion*

20       Second, the FAC fails to establish a common sense conclusion that a reasonable

21  consumer would be misled by the Gummies' packaging. *See Brady*, 26 Cal. App. 5th

22

23  _____

    [3] Courts have held that the "reasonable consumer standard" applies to claims under
24  the unlawful prong in the UCL when the claim is "grounded in fraud." *See, e.g.*,
    *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017) (unlawful
25  prong of UCL claims grounded in fraud where plaintiff alleged that defendant made
    deceptive health claims on its packaging); *but see Bruton v. Gerber Prod. Co.*, 703 F.
26  App'x 468, 472 (9th Cir. 2017) (reasonable consumer test is not a requirement under
    the UCL's unlawful prong when it is not an element of the predicate violation). Food
27  labeling requirements are designed, as a predicate, to ensure that consumers are not
    deceived by "false or misleading" product labels. *See, e.g.*, FDA website at
28  https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm337628.htm). In any
    event, Plaintiff has not satisfied the standing and reliance elements as discussed in
    Section IV.B.1, *supra*.

11

at 1172.  Like her prior pleading, Plaintiff's UCL, FAL and CLRA claims rest entirely upon the Gummies' front package statement "[a]pple, watermelon, tangerine and lemon flavored candies."  (FAC ¶¶ 15, 30, 64, 65, 76, 129, 141, 151, 164.)  Plaintiff's FAC alleges **no additional facts** regarding the representations on the Gummies' packaging or any other statements made by Starbucks.  The Court has already found that the statement "[a]pple, watermelon, tangerine, and lemon flavored candies" would not lead a reasonable consumer to infer that the Gummies contain only natural ingredients.  (*See* DE No. 14 at p. 6:23-7:1); *compare also Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012 (holding that cracker packaging with the statement "made with real vegetables" and a depiction of vegetables would not lead a reasonable consumer to believe that the crackers were "healthy" or were primarily composed of fresh vegetables) *with Allred v. Frito-Lay N. Am., Inc.*, 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (denying motion to dismiss where package stated "No artificial flavors" but contained malic acid).  Accordingly, in the absence of any new allegations, Plaintiff's FAC remains deficient.

As mentioned, Plaintiff does include additional quotes from the same section of the Code of Federal Regulations at the heart of her original complaint, 21 C.F.R. § 101.11.  (FAC ¶¶ 8, 10-11, 13.)  Plaintiff attempts to tie this regulatory language to the Gummies' front packaging, presumably to establish deception under the reasonable consumer standard.  (*See, e.g.*, FAC ¶ 8, 11-13.)

Yet, as the Court has already noted (*see* DE No. 14 at p. 8:6-16), an alleged failure to abide by a federal or California advertising or food labelling requirement, without more, does not plausibly establish that a reasonable consumer would be deceived.  *See also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1088 (N.D. Cal. 2014) (explaining that "deception claims must be predicated on more than simple regulatory violations" and that "a 'mere alleged violation of the underlying regulations' is insufficient to state a claim under the UCL") (citing *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143-1144 (N.D. Cal. 2013)); *Trazo v. Nestle*

12

*USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013) ("While regulatory violations might suggest that these statements might be misleading to a reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the misleading/false advertising prongs of the UCL."); *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) (granting motion to dismiss, because the plaintiff failed to explain "what exactly is misleading about ['delivers healthful antioxidants'] aside from the fact that it may technically violate FDA regulations."). Indeed, as a jurisdictional matter, "Article III standing requires a concrete injury even in the context of a statutory violation. [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Because Plaintiff's FAC alleges no new representations or statements made on the Gummies' packaging or by Starbucks generally, and instead relies only upon a disputed regulatory violation, Plaintiff's FAC remains deficient under the second prong of the "reasonable consumer" standard.

### iii.   *No allegations establishing front-back dichotomy*

Third, the FAC does not allege new facts that would present a "front-back" dichotomy. *Brady*, 26 Cal. App. 5th at 1172.  "In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label because a review of the statement of ingredients makes the composition of the [product] clear." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013).

Here, like her prior pleading, Plaintiff does not challenge the accuracy of the ingredient list, nor does she contend that the Product does **not** contain "[a]pple, watermelon, tangerine, and lemon flavored candies" or does **not** consist of "Sour Gummies."  Instead, Plaintiff relies solely upon a disputed regulatory violation and provides no plausible explanation how the phrase "[a]pple, watermelon, tangerine and lemon flavored candies" promises that the candy contains "no artificial flavors."

13

Plaintiff does revise one of her previous allegations to suggest a "front-back" bait and switch problem as articulated in *Williams*.  In her FAC, Plaintiff alleges that "[w]hen purchasing the Product, Plaintiff and the Class were seeking a product of particular qualities, **one that was consistent with the Product's front-of-package labeling** and which did not contain artificial flavoring.  (FAC ¶ 59 (emphasis added).)  Relatedly, Plaintiff concludes "[o]mitting this disclosure from the Product's front label conceals this fact from consumers, who are not required to scrutinize the rear-label for information that federal and state regulations require by displayed prominently on the front."  (*Id.* ¶ 38.)  Yet, even with these new allegations, Plaintiff still does not plausibly explain how the front of the Gummies' packaging is inconsistent with the ingredients list—nor could she.  The statement "[a]pple, watermelon, tangerine and lemon flavored candies" ultimately confirms what the ingredient list identifies on the back of the packaging, and there are no other affirmative statements, such as "no artificial ingredients" or "no artificial flavors" on the packaging.  (*See* DE No. 14 at p. 9:3-4.)  Accordingly, Plaintiff's claim is still deficient.

In any case, "fumaric acid" is not a substance that an ordinary person would immediately recognize as occurring in nature, and the fact that the Gummies' front packaging does not identify this substance as artificial would not deceive a reasonable consumer into thinking otherwise.  *Cf., e.g., Maxwell v. Unilever United States, Inc.*, 2018 WL 1536761, at *6 (N.D. Cal. Mar. 29, 2018) (finding that "phosphoric acid" and "citric acid" are not ingredients a reasonable consumer would recognize as "natural").  And even if *arguendo* the presence of "fumaric acid" in and of itself is not enough to suggest artificiality, the Product's packaging read in its entirety does.  (*See* FAC, Figure 2 ("citric acid," "sodium citrate," and "color added").)  As the court in *Maxwell* determined, no reasonable consumer would deem ingredients such as these as "all natural."  *Cf.*, *Maxwell*, 2018 WL 1536761, at *6 (finding that no reasonable consumer would deem the product's entire label deceptive, because it contained other

14

1    ingredients, like Caramel Color, which no reasonable consumer would deem to be

2    "non-artificial").  For this reason as well, Plaintiff's FAC fails to establish a "front-

3    back" dichotomy.

4                              iv.    *No allegations establishing misleading brand name*

5            Finally, as before, Plaintiff's FAC does not allege that the nature of Starbucks'

6    brand name is misleading.  *Brady*, 26 Cal. App. 5th at 1172.  "[M]arketing theory

7    emphasizes the use of descriptive brand names as a marketing strategy."  *Id.* at 1170.

8    "The advantage of a descriptive brand name is that it requires of the consumer 'little

9    thought, little explanation, little effort to build understanding of what the offering

10   actually is.'"  *Id.*  The case *In re 5-hour ENERGY Marketing and Sales Practices*

11   *Litig.*, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) is a prime example.  There, buyers

12   of the energy drink "5-hour ENERGY" filed a class action alleging, *inter alia*,

13   violations of California's false advertising law.  The claim survived the pleading stage

14   on the allegation that the name "5-hour ENERGY" was misleading, because the

15   product did not give consumers "five hours of energy."  *Id.* at *18.  Here, Plaintiff

16   does not (and cannot) allege that the "Starbucks Sour Gummies" brand name is, by its

17   nature, misleading. What is more, the Gummies are clearly visible to the consumer

18   through the transparent packaging, and, as the Court noted, "[n]othing about the

19   product itself—a brightly-colored gelatinous candy—would lead a reasonable

20   consumer to conclude that the Gummies contain only natural ingredients."  (DE No.

21   14 at p. 7:18-21.)  Accordingly, Plaintiff's FAC fails to meet the fourth prong of the

22   "reasonable consumer" standard.

23           In sum, Plaintiff's FAC does not plausibly allege that a reasonable consumer

24   would conclude the Gummies contain no artificial ingredients.  Plaintiff, therefore,

25   fails to state a claim under the FAL, CLRA or UCL.  Because Plaintiff has shown that

26   she cannot allege any facts that would sufficiently cure her FAL, CLRA and UCL

27   causes of action, the Court should dismiss these claims with prejudice.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.   Plaintiff's Express Warranty Claim Fails as a Matter of Law

Plaintiff's breach of express warranty claim remains deficient.  Under California Commercial Code section 2313, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Cal. Comm. Code § 2313.  In order to plead a cause of action for breach of express warranty, a plaintiff must "identify a specific and unequivocal written statement" about the product that constitutes an "explicit guarantee" or description of the goods at issue that becomes the basis of the bargain.  *Id.*

In its March 1, 2019 order, the Court determined that Plaintiff's prior pleading failed to "plausibly allege that Starbucks promised, as a basis of the parties' bargain, that the Gummies would not contain artificial ingredients."  (DE No. 14 at p. 9:11-13.)  Plaintiff's FAC alleges no new facts that would cure this defect.  Indeed, the FAC lacks any new facts regarding the statements made on the Gummies' packaging or by Starbucks generally.  Thus, Plaintiff's FAC does not (and cannot) establish that the Gummies' packaging created an express warranty, let alone a breach of any warranty.

In addition, while Plaintiff has now surgically stricken the words "as if" from her allegations (*compare* Compl. ¶¶ 13, 27 *with* FAC ¶ 16, 30), Plaintiff's FAC still recognizes there is no express statement or promise upon which she can base her claim.  (*See* FAC ¶ 171 ("The Product does not solely contain apple, watermelon, tangerine, and lemon flavors **as the label suggests**—it contains *artificial* apple, watermelon, tangerine, and lemon flavors); ¶ 179 ("Because the Product does not contain an 'artificially flavored' disclosure as required by law, the Product's front label **misleadingly implies** that the Product is not flavored with artificial ingredients.") (emphasis added).)  Thus, like her prior pleading, Plaintiff resorts to alleging that the Gummies are labeled "all natural" by operation of law.  For the same reasons Plaintiff's original claim failed, Plaintiff's current claim fails.

**D.      Plaintiff's Implied Warranty Claim Fails as a Matter of Law**

Plaintiff's claim for breach of implied warranty remains equally deficient.  As before, Plaintiff's breach of implied warranty claim is exclusively predicated on the implied warranty of merchantability.  (*See* FAC ¶¶ 176-194.)  The implied warranty of merchantability may be violated if (i) the product does not "[p]ass without objection in the trade under the contract description," (ii) is not "fit for the ordinary purposes for which such good [is] used, or (iii) does not "[c]onform to the promises or affirmations of fact made on the container or label if any."  Cal. Comm. Code § 2314(2).

In its March 1, 2019 order, the Court determined that Plaintiff's prior pleading failed to state a claim for breach of implied warranties, because "(1) she d[id] not plausibly allege that the Gummies fail to conform to the promises or affirmations of fact on the label, (2) she d[id] not plausibly allege that Starbucks warranted the Gummies were fit for the specific purpose of 'naturally-flavored food product,' and (3) the ingredient's list discloses that the Gummies contain fumaric acid."  (DE No. 14 at p. 9:18-22.)

Plaintiff's FAC does not cure any of these deficiencies.  Indeed, Plaintiff (1) does not allege any new facts that would plausibly establish the Gummies fail to conform to the statements made on the label (i.e., (a) "Starbucks Sour Gummies"; (b) "[a]pple, watermelon, tangerine, and lemon flavored candies"; and (c) an ingredient list that discloses, *inter alia*, the fumaric acid), (2) does not allege any new facts that Starbucks made any statements outside the four corners of the Gummies' packaging that would plausibly warrant the Gummies were fit for the specific purpose of "naturally-flavored food product," and (3) does not dispute that the ingredient list on the Gummies' packaging discloses the "fumaric acid" ingredient.  As such, Plaintiff's claim for breach of implied warranties remains unchanged and should be dismissed.

**E.      Plaintiff's Common Law Fraud and Negligent Misrepresentation Claims Fail as a Matter of Law**

**1.      Fraud by Omission**

"[T]he elements of a cause of action for fraud based on concealment are: (1) the

17

defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 310-311 (2017) (internal quotation marks and citations omitted).  The Ninth Circuit has long held that allegations of fraud must meet the heightened pleading standards of Rule 9(b).  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Here, Plaintiff alleged no new facts that would demonstrate that Starbucks "concealed" or "suppressed" any fact—on the contrary, the presence of "fumaric acid" is still explicitly disclosed on the Product's packaging.  (*See* FAC, Figure 2.)  Plaintiff takes issue with the manner and location of disclosure, but cannot plausibly allege that Starbucks engaged in "fraud" by "concealing" its presence in the Product.  For this reason, alone, the fraud claim fails.

Moreover, as detailed in Section IV.B.1, *supra*, Plaintiff has failed to allege plausible facts demonstrating reasonable reliance on the alleged "deception," let alone any damages resulting from such reliance.  In sum: the presence of ingredients such as "fumaric acid," "citric acid," "sodium citrate," and "color added"—in addition to the **total lack** of any representations regarding "all natural" ingredients or "no artificial ingredients" anywhere on the Gummies' packaging—all belie any notion that Plaintiff reasonably was led to believe that the Product contained "only natural ingredients" or "no artificial flavors."  For each of these reasons, Plaintiff's fraud claim fails.

### 2. Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim is still barred by the economic loss rule, which prohibits tort claims in contract disputes "unless [the party bringing the claim] can demonstrate harm above and beyond a broken contractual promise."

*Robinson v. Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  Courts routinely dismiss negligent misrepresentation claims in the food-litigation context where the plaintiff "ha[s] failed to state an independent basis for their damages apart from the economic loss."  *Swearingen v. Santa Cruz Natural, Inc.*, 2016 WL 4382544, at *10 (N.D. Cal. Aug. 17, 2016); *see also Strumlauf*, 2016 WL 331842, at *7-8; *In re Safeway Tuna*, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016).  Here, like her prior pleading, Plaintiff's FAC seeks recovery only for alleged economic loss, not injury to persons or property (*see* FAC ¶¶ 71, 89, 117, 123), and thus her negligent misrepresentation claim is barred.

Plaintiff's negligent misrepresentation claim fails as a matter of law for another, independent reason:  "A negligent misrepresentation claim 'requires a positive assertion,' not merely an omission."  *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (quoting *Lopez v. Nissan N. Am. Inc.*, 201 Cal. App. 4th 572 (2011)); *see also Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993).  Importantly, **[a]n 'implied' assertion or representation is not enough."**  *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d at 1230 (emphasis added); *see also Byrum v. Brand*, 219 Cal. App. 3d 926, 942 (1990).

In her FAC, Plaintiff makes no changes to her negligent misrepresentation claim.  Indeed, not only does Plaintiff's FAC still improperly predicate Plaintiff's negligent misrepresentation claim on Starbucks' alleged "omission of the fact that th[e] Product contained artificial flavoring" (FAC ¶ 82), but her entire theory of liability is still grounded in "implied" assertions and suggestions (*see id.* ¶¶ 179, 189.)  Because Plaintiff has demonstrated she cannot allege any facts that would cure this deficiency, the Court should dismiss this claim with prejudice.

**V.    STARBUCKS IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA FOR CLAIMS OF NON-CALIFORNIA RESIDENTS**

The deficiencies outlined above necessitate dismissal of each of Plaintiff's claims.  In the event that the Court finds any of the claims to be adequately pleaded,

however, it should nonetheless dismiss the putative class claims, pursuant to Fed. R. Civ. P. 12(b)(2), to the extent they are alleged on behalf of **non-California** residents. This is because under the U.S. Supreme Court's reasoning in the recent case of *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Starbucks is not subject to personal jurisdiction for such claims in this action, as detailed below.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the Court's personal jurisdiction over a party.  The plaintiff bears the burden of establishing by *prima facie* evidence that jurisdiction is present.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  There are two varieties of personal jurisdiction: "general (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017).  A court with general jurisdiction may hear any claim against the defendant, even if all the incidents underlying the claim occurred in a different state.  *Id.* at 1780.

As the Supreme Court has confirmed in its recent decisions, a corporation is only subject to *general* jurisdiction where it is "at home"—which is generally limited to (1) the corporation's principal place of business; and (2) the corporation's state of incorporation.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014).  In so holding, the *Daimler* court **rejected** the notion that merely having "continuous and systematic" contacts with a state is sufficient to subject a corporation to general personal jurisdiction.  *See id.*  Here, Plaintiff admits that Starbucks is a Washington corporation with its principal place of business in Washington (*see* FAC ¶ 20), and thus Starbucks is not subject to general personal jurisdiction in California.[4]

Turning to *specific* personal jurisdiction:  In *Bristol-Myers*, the Supreme Court

---

[4] Nor has Plaintiff alleged "exceptional" facts that might render Starbucks "at home" in California (notwithstanding its Washington headquarters and Washington incorporation) under the holding of *Daimler*.  Rather, Plaintiff's only allegations in this regard relate to Starbucks alleged "minimum contacts" with California and typical business activities of any large company (*see* FAC ¶ 4), which cannot confer *general* personal jurisdiction over a defendant.  *See Daimler*, 571 U.S. at 138-39.

first observed that for a court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum."  137 S. Ct. at 1780 (internal quotes and citations omitted).  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State..."  *Id.*  In furtherance of this principle, the Court held that *out-of-state* plaintiffs could not rely on the existence of specific personal jurisdiction regarding the claims of *in-state* plaintiffs, even where the subject matter of the claims (*i.e.*, liability relating to the prescription drug Plavix) was the same in all instances.  *See id.* at 1783.  In other words, the Court held that *each plaintiff's* claim must arise from the defendant's forum-related activities, regardless of whether specific jurisdiction was established for another claimant.  *Id.* ("The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow [California] to assert specific jurisdiction over the nonresidents' claims.")  *Id.*

Although *Bristol-Myers* was a "mass-action" (*i.e.*, a suit wherein many named plaintiffs sue together) rather than a class action, its reasoning applies with equal force to the claims of members of a putative class.  Indeed, numerous courts throughout the country have so held, finding that under *Bristol-Myers*, the claims of putative class members who did not suffer injury in the forum state cannot be pursued in the same action (unless, of course, the defendant is subject to *general* personal jurisdiction in the forum, which is not the case here).  *See, e.g., In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. 2017) ("Plaintiffs attempt to side-step the due process holdings in *Bristol-Myers* by arguing that the case has no effect on the law in class actions because the case before the Supreme Court was not a class action. This argument is flawed. The constitutional requirement of due process does not wax and wane when the complaint is individual or on behalf of a class."); *see also Practice Mgmt. Support Svcs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861-62 (N.D. Ill. 2018) ("this Court agrees with the *Greene*, *McDonnell*, and *DeBernardis* courts

that Bristol–Myers extends to federal court class actions"); *Roy v. FedEx Ground Package System, Inc.*, 353 F. Supp. 3d 43, 56 (D. Mass. 2018) ("Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; rather, the Court announced a general principle—that due process requires a connection between the forum and the specific claims at issue.") (internal quotes and citations omitted).[5]

For these reasons, Starbucks is not subject to personal jurisdiction for the claims of out-of-state consumer plaintiffs in this action, and the Court should dismiss the putative class claims to the extent they are pleaded on behalf of such individuals.

## VI.   EVEN IF *ARGUENDO* STARBUCKS IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA FOR NON-CALIFORNIA RESIDENTS' CLAIMS, THE COURT SHOULD STRIKE OR DISMISS THE NATIONWIDE CLASS ALLEGATIONS

As set forth above, all of Plaintiff's causes of action fail and the Court should dismiss the FAC in its entirety. Moreover, Starbucks is not subject to personal jurisdiction here for the claims of non-California putative class members. If, however, that the Court (1) deems any of Plaintiff's claims to be adequately pleaded, and (2) finds that Starbucks is subject to personal jurisdiction for the claims of out-of-state plaintiffs, it should nonetheless strike (or dismiss) the FAC's class allegations to the extent they encompass non-California plaintiffs, as detailed below.

The FAC is a putative class action, with multiple classes identified, *i.e.*, a nationwide class of "U.S. citizens who purchased the Product in their respective state of citizenship" and a sub-class of California purchasers. (*See* FAC ¶¶ 95-96.) Several of the FAC's various causes of action are pleaded on behalf of the nationwide class, including the first (Common Law Fraud by Omission) and second (Negligent Misrepresentation) (collectively, the "Common Law Claims"). The FAC also

---

[5] *See also Mussat v. IQVIA, Inc.*, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017); *Muir v. Nature's Bounty (DE), Inc.*, 2018 WL 3647115, at *4-5 (N.D. Ill. Aug. 1, 2018); *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *16 (D.N.J. Apr. 25, 2018); *but see, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017). Thus far, it does not appear that the Ninth Circuit or any other federal appellate court has addressed this issue.

1  purports to extend the seventh (Breach of Express Warranties) and eighth (Breach of

2  Implied Warranties) causes of action (collectively, the "California Warranty Claims")

3  to include both the California Class and an undefined third "class," *i.e.*, an unspecified

4  group of "states with substantially similar laws."

5  **A.    The Procedural Bases for Eliminating Nationwide Class Claims**

6  The viability of a putative class is most commonly addressed in the context of a

7  plaintiff's motion for class certification under Fed. R. Civ. P. 23.  "However, as the

8  Supreme Court has explained, '[s]ometimes the issues are plain enough from the

9  **pleadings** to determine whether the interests of the absent parties are fairly

10 encompassed within the named plaintiff's claim.'"  *Clark v. LG Elecs. U.S.A., Inc.*,

11 2013 WL 5816410, at *16 (S.D. Cal. 2013) (emphasis added) (quoting *Gen. Tel. Co.*

12 *of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  "Thus, a court may grant a motion to

13 strike class allegations if it is clear from the complaint that the class claims cannot be

14 maintained."  *Clark*, 2013 WL 5816410, at *16 (citing *Sanders v. Apple, Inc.*, 672 F.

15 Supp. 2d 978, 990-91 (N.D. Cal. 2009)).  The procedural vehicle typically used for

16 this purpose is a motion under Fed. R. Civ. P. 12(f).  *See, e.g.*, *Clark*, 2013 WL

17 5816410, at *16; *Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459, at *3 (N.D. Cal.

18 2012) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993)).  Alternatively,

19 some courts eliminate class allegations at the pleadings stage via Fed. R. Civ. P.

20 23(d)(1)(D), which permits a court to "issue orders that…require that the pleadings be

21 amended to eliminate allegations about representation of absent persons and that the

22 action proceed accordingly."  *See Roberts*, 2012 WL 6001459, at *3 ("Pursuant to

23 Rule 23(d)(1)(D), the court may strike class allegations if the complaint plainly

24 reflects that a class action cannot be maintained.") (citing *Hovsepian v. Apple, Inc.*,

25 2009 WL 5069144, at *2 (N.D. Cal. 2009)).  Finally, at least one court has declined to

26 entertain a motion to "strike" class allegations under Rules 12(f) or 23(d)(1)(D), but

27 instead allowed it to proceed as a motion to "dismiss" the nationwide claims under

28 Rule 12(b)(6).  *See Tasion Comms., Inc. v. Ubiquiti Networks, Inc.*, 2014 WL

1048710, at *3 (N.D. Cal. Mar. 14, 2014). Under each of the foregoing approaches, the analysis is the same, and turns upon whether it is evident as a matter of law that the proposed class is not viable. *See Clark*, 2013 WL 5816410, at *16; *Roberts*, 2012 WL 6001459, at *3; *Tasion*, 2014 WL 1048710, at *3.

### B. A Nationwide Class Is Legally Inappropriate for Plaintiff's Claims

In the consumer-protection context, a plaintiff's claims are generally governed by the laws of the jurisdiction in which the plaintiff made his or her purchase. *See, e.g.*, *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 593-94 (9th. Cir. 2012) ("each foreign state has an interest in applying its law to transactions within its borders"). In particular, the Ninth Circuit has observed that "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id.* (citations omitted). Thus, in the consumer context, "[t]he last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing [products]— took place in the various foreign states, not in California," and "[t]hese foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state." *Mazza*, 666 F.3d at 594; *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) ("although *Mazza* was decided at class certification, 'the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss,'" and "is 'not only relevant but controlling,' even at the pleading phase.").

Accordingly, to the extent Plaintiff is asserting her Common Law Claims on behalf of a nationwide class, adjudication of the claims would necessarily entail the application of the different laws of the 50 states, which is wholly impractical. In this context, courts regularly hold that class-wide adjudication is not viable, given the lack of legal uniformity—particularly regarding fraud-based claims. *See, e.g., Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *13-14 (N.D. Cal. Aug. 15, 2016) ("[m]aterial variations…exist among the states' laws regarding common law fraud," such as the

1   reliance requirement, the burden of proof, and statute of limitations).

2       Plaintiff's attempt to extend the application of the California Warranty Claims

3   to purchasers outside of California is equally inappropriate as a matter of law.  Again,

4   as the Ninth Circuit has held, "each class member's consumer protection claim should

5   be governed by the consumer protection laws of the jurisdiction in which the

6   transaction took place," and "each foreign state has an interest in applying its law to

7   transactions within its borders."  *Mazza*, 666 F.3d at 594; *see also Frenzel*, 76 F.

8   Supp. 3d at 1017 (dismissing warranty claims asserted under California law where

9   purchase was not made in California).  In the context of warranty claims in particular,

10  this distinction between state laws is not merely theoretical, but practical—as there are

11  "significant" and "material" differences among the states' laws regarding express and

12  implied warranty.  *Darisse*, 2016 WL 4385849, at *11-13 (citing cases noting the

13  variations in the privity, reliance and notice requirements as well as the definition of

14  merchantability across numerous states).

15      Finally, Plaintiff's attempt to extend the California Warranty Claims to include

16  "states with substantially similar laws" is inappropriate for the additional reason that it

17  is vague, uncertain and violates the rules of this Court.  Specifically, Local Rule 23.1

18  requires that, in any class action, "[t]he complaint must include a statement describing

19  the class or classes on behalf of which the action is sought to be maintained."  L. Civ.

20  R. 23.1(b).  Here, the FAC provides a description of the nationwide class (FAC ¶ 95)

21  and the California sub-class (FAC ¶ 96)—but no other class.  The rules of this Court

22  forbid Plaintiff from asserting putative class claims on behalf of an amorphous,

23  patchwork-quilt of residents of states that are **not even identified** in the complaint—

24  and with good reason, as such a tactic would deprive a defendant of the basic due

25  process right to know what claims are being asserted (and by whom).

26  **VII.  CONCLUSION**

27      The Court should dismiss the FAC without further leave to amend.  If the Court

28  declines to dismiss all claims, it should strike/dismiss the nationwide class allegations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

K&L GATES LLP


Dated:  March 29, 2019          By:  s/ *Kate G. Hummel*
                                     Paul W. Sweeney, Jr.
                                     Kevin S. Asfour
                                     Kate G. Hummel

                                     kate.hummel@klgates.com

                                     Attorneys for Defendant
                                     STARBUCKS CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

Case No. 3:18-cv-02286-JM-WVG

On March 29, 2019, the foregoing document was served on the following counsel of record who have consented to electronic service via the Court's CM/ECF system, via the email address(es) listed below:

Ronald A. Marron                          Attorneys for Plaintiff
ron@consumersadvocates.com                SANDRA BROWN
Michael T. Houchin
mike@consumersadvocates.com
**LAW OFFICES OF RONALD A.**
**MARRON**
651 Arroyo Dr.
San Diego, California 92103
T: 619.696-9006
F: 619.564.665

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of March, 2019 in Los Angeles, California.

Kate G. Hummel

1
**CERTIFICATE OF SERVICE**