UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA BROWN,<br><br>          Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>          Defendant. | Case No.: 18cv2286 JM (WVG)<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Starbucks Corporation ("Starbucks") moves to dismiss and/or strike Plaintiff Sandra Brown's First Amended Complaint ("FAC") pursuant to Rules 12(b)(6), 12(b)(2), and 12(f). (Doc. No. 16.) Plaintiff Sandra Brown opposes. (Doc. No. 17.) The court found this matter suitable for disposition without oral argument. (Doc. No. 20.) Having carefully considered the moving papers and parties' arguments, the court grants in part and denies in part Starbucks' motion to dismiss.

## BACKGROUND

This is a putative class action lawsuit brought under the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)) and arising out of Brown's purchase of fruit-flavored gummy candies. Brown asserts eight claims on behalf of herself and putative class members: (1) fraud by omission, (2) negligent misrepresentation, (3) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), (4) violation of § 17200 of the California Business & Professions Code ("UCL") for unlawful business practices, (5) violation of § 17200 of the UCL for unfair business practices, (6)

violation of California's False Advertising Law, Business and Professions Code § 17500 *et seq.* ("FAL"), (7) breach of express warranties, and (8) breach of implied warranties. (Doc. No. 15, "FAC," ¶¶ 112-194.)

Brown alleges the packaging of Starbucks' "Sour Gummies" product (the "Gummies") falsely informs consumers that the candies only contain natural ingredients because the front packaging does not disclose the presence of artificial flavors. The front packaging states, "Apple, watermelon, tangerine and lemon flavored candies." (FAC ¶ 9.)



(FAC at 7, Figure 1.)[1] An ingredients list on the back packaging states that the Gummies contain "sugar, cornstarch, fumaric acid, citric acid, fruit juice concentrates (tangerine, apple, lemon), pectin, sodium citrate, color added (saffron, annatto, vegetable and spirulina extracts), natural flavors." (FAC at 8, Figure 2.)



When she purchased the Gummies, Brown sought a product that did not contain artificial flavors. (FAC ¶ 59.) Brown paid a price premium for the Gummies because she believed the product did not contain artificial ingredients and was willing to pay more for

---

[1] All page citations refer to those generated by the court's CM/ECF system.

18cv2286 JM (WVG)

a product made with only natural ingredients.  (FAC ¶ 71.)

Brown alleges that California law required Starbucks to disclose on the front packaging that the Gummies contained artificial flavors.  Brown alleges that Starbucks violated two federal Food and Drug Administration ("FDA") regulations—21 C.F.R. § 101.22, which regulates the labelling of food containing artificial ingredients, and 21 C.F.R. § 102.5, which requires food labels to accurately identify and describe the basic nature of the food or its characterizing properties or ingredients.  These FDA regulations are incorporated into California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety Code § 109875 <u>et seq</u>.  <u>See</u> Sherman Act § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal acts in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.").  Brown relied on "the omission of the fact that this Product contained artificial flavoring" on the front packaging to conclude that the Gummies did not contain any artificial flavors.  (FAC ¶ 82.)  Starbucks does not concede these FDA regulations required it to disclose the use of artificial flavors on the front packaging as it argues this is an evidentiary matter Plaintiff must prove, but for purposes of its motion to dismiss, Starbucks "assumes that the requirement applies . . . ."  (Doc. No. 16-1 at 10 n.1.) Accordingly, for purposes of this order, the court also assumes that Starbucks was required to prominently disclose the presence of artificial flavors on the Gummies' front packaging.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings.  To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than

plausible. Id. at 678-79. The court must accept as true the facts alleged in a well-pled complaint, but mere legal conclusions are not entitled to an assumption of truth. Id. The court must construe the pleading in the light most favorable to the non-moving party. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead fraud with particularity. "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (internal quotation marks omitted). Even if "fraud is not a necessary element of a [particular] claim," Rule 9(b) will apply if the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [the] claim." Id. at 1103.

## DISCUSSION

Starbucks moves to dismiss Brown's complaint for failure to state a claim and for lack of personal jurisdiction over Starbucks for claims asserted by out-of-state class members. Starbucks also moves to strike Brown's nationwide class allegations. For the reasons discussed below, the court grants in part and denies in part these motions.

### A. CLRA, FAL, and UCL Claims

The CLRA, FAL, and UCL are California consumer protection statutes. The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Under the FAL, it is unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading." Id. § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

The UCL, FAL, and CLRA all prohibit "not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002) (quoting Leoni v. State Bar, 39 Cal. 3d 609 (1985)); Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 680 (2006). Plaintiff's claims for misleading

advertising under the UCL, FAL, and CLRA are governed by the "reasonable consumer" standard. Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). Under this standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" Id. Although the "reasonable consumer" is not one who is "versed in the art of inspecting and judging a product," Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010), this test nonetheless "requires more than a mere possibility that [a product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" Id.

The question of whether a business practice is "deceptive" in most cases presents a question of fact not amenable to resolution on a motion to dismiss. See Williams, 552 F.3d at 938. "However, in certain instances, [a] [c]ourt can properly make this determination and resolve such claims based on its review of the product packaging." Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013).

Brown's UCL, FAL, and CLRA claims are premised on Starbucks' allegedly misleading advertising. (Doc. No. 15.) Accordingly, the court applies the "reasonable consumer" standard. See Williams, 552 F.3d at 938. In her original complaint, Brown alleged that "*[b]y operation of California law*, identifying [the four fruit] flavors by name on the Product label without any qualifying language warrants to the consumer that Product is flavored only with natural flavors." (Doc. No. 1, Compl. ¶ 30) (emphasis added.) The court dismissed these claims as the complaint failed to plausibly allege a reasonable consumer would be misled by the Gummies' packaging. (Doc. No. 14.) The court based its ruling on the fact that Brown did not allege the packaging made any misrepresentations; the fruit "flavors" statement on the packaging would not plausibly lead a consumer to believe the Gummies contain *only* natural ingredients; and Starbucks' alleged failure to

abide by federal and California advertising and food labelling requirements, without more, would not mislead a reasonable consumer. (Doc. No. 14.) Brown failed to "identif[y] any other circumstances that would lead a reasonable consumer to conclude that the Gummies do not contain artificial ingredients." (Id. at 8.) The FAC's allegations relating to representations on the Gummies' packaging thus remain insufficient to plausibly allege a reasonable consumer would believe the Gummies contain only natural flavors. However, Brown now alleges that "[c]onsumers did not know the Product contained artificial flavoring ingredients due to Defendant's omission of the legally-required [artificial flavoring] disclosure . . . ." (FAC ¶ 65.) The court accepts this allegation as true. See Iqbal, 556 U.S. at 678. At this stage, Starbucks does not dispute it had a duty to disclose the presence of artificial flavors on the Gummies' front packaging.[2] Accordingly, unlike Brown's original complaint, the FAC goes beyond assertion of a mere regulatory violation. Brown's claims narrowly survive on her allegation, and the reasonable inferences drawn from this allegation, that a reasonable consumer would expect a product only contains natural flavors when the product's packaging does not disclose the use of artificial flavors near the description of its characterizing flavors. Whether Brown can prove this allegation is a matter for summary judgment or trial. See Williams, 552 F.3d at 938.

The FAC also satisfies the pleading requirements of Rule 9(b) as Brown alleges that Starbucks (the who) intentionally failed to disclose the presence of artificial flavors on the Gummies' front packaging (the what) when Brown purchased the candies in December 2017 (the when) in Santee, California (the where), which misled Brown to believe the Gummies contained only natural ingredients as consumers in California expect products with artificial characterizing flavors to prominently display that information on the packaging (the how). See Vess, 317 F.3d at 1103.

---

[2] Plaintiff's claims are rooted in an alleged omission. The parties do not cite, but at the summary judgment stage, should be aware of the standards set forth in Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824 (2006).

**B. Standing**

Starbucks argues Brown lacks standing for her FAL, CLRA, and UCL claims as she fails to allege that she reasonably relied on Starbucks' misrepresentations or suffered any economic injury. "To establish standing to bring a claim under [the FAL, CLRA, and UCL], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015). Plaintiffs must "show that they 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'" Hawkins v. Kroger Co., 906 F.3d 763, 768 (9th Cir. 2018) (citing Cal. Bus. & Prof. Code §§ 17204 (UCL); *id.* § 17535 (FAL)). "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 965 (9th Cir. 2018). "Thus, a consumer's allegation that 'she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury.'" Id. at 965-66 (quoting Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011)). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." Davidson, 889 F.3d at 966 (quotation marks omitted).

Starbucks argues that Brown does not plausibly allege she relied on the Gummies packaging as her "alleged reliance is her own unique interpretation about what the statements on the Gummies' packaging allegedly meant to her." (Doc. No. 16-1 at 18.) The court finds that Brown adequately pleads reliance on Starbucks' omission of an artificial flavor disclosure and resulting economic injury. Brown alleges she was unaware the Gummies contained artificial flavors when she purchased them because the front packaging did not disclose the use of artificial flavors. (FAC ¶¶ 56, 77.) Plaintiff was seeking products that only used natural ingredients and would not have purchased the Gummies if she knew they contained artificial flavors. (FAC ¶ 57.) Plaintiff alleges the

Gummies' packaging deceived her into paying a price premium for a product she thought contained only natural ingredients. (FAC ¶¶ 66, 82.) Accordingly, Plaintiff alleges she lost money in the amount of the price premium she paid for the Gummies. (FAC ¶ 84.) Plaintiff further alleges she would not have purchased the Gummies in the absence of the misleading packaging. (FAC ¶ 81.) As discussed above, the FAC plausibly alleges a reasonable consumer would be misled by Starbucks' failure to disclose on the front packaging that the Gummies contain artificial flavors. Accordingly, the FAC sufficiently pleads reliance on the Gummies' misleading packaging and resulting economic harm.[3]

### C. Express Warranty

California Commercial Code § 2313 provides, in relevant part, "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;] [and] (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1). "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Plaintiff must plead "facts showing a 'specific and unequivocal written statement' of warranty." Cruz v. Anheuser-Busch Companies, LLC, 682 F. App'x 583, 584 (9th Cir. 2017) (quoting Maneely v. Gen. Motors Corp., 108 F.3d 1176, 1181 (9th Cir. 1997)).

Plaintiff alleges three bases for her warranty claim: (1) "[t]he failure to disclose the

---

[3] Starbucks also argues that Brown does not explain how she could have relied on the misleading Gummies packaging if she read the ingredients list on the back packaging, which disclosed the use of artificial flavors. (Doc. No. 16-1 at 18.) The FAC does not allege that Plaintiff read the back ingredients; Brown alleges she was unaware the Gummies contained artificial flavors when she purchased them. (FAC ¶ 56.)

use of artificial flavoring on the Product's front label, by operation of law, informs consumers that the Product does not contain artificial flavors," (FAC ¶ 169); (2) "Starbucks' health and wellness campaign further reinforced reasonable consumers' beliefs that the Product did not contain artificial flavors," (FAC ¶ 170); and (3) "[t]he Product does not solely contain apple, watermelon, tangerine, and lemon flavors as the label suggests – it contains *artificial* apple, watermelon, tangerine, and lemon flavors," (FAC ¶ 171) (emphasis in original).

First, the failure to disclose a fact is not "a 'specific and unequivocal written statement' of warranty." See Cruz, 682 F. App'x at 584. Second, Plaintiff fails to identify any statements in Starbucks' health and wellness campaign warranting its products do not contain artificial flavors. See id. Plaintiff alleges Starbucks' health and wellness campaign states "that Starbucks listens to its customers and continues to evolve its health and wellness options influenced by customer feedback." (FAC ¶ 27.) Starbucks' Director of Retail Brand Partnerships allegedly stated that Starbucks "know[s] customers are snacking on the go and looking for snacks that are healthier." (FAC ¶ 28.) Plaintiff alleges Starbucks "offers 'packaged snacks' as 'a great opportunity to expand [its] offerings to those with specific dietary needs, like gluten-free and vegan.'" (FAC ¶ 29.) None of these statements warrant, or even imply, that Starbucks does not use artificial flavors. Plaintiff fails to connect the fact that Starbucks may know its customers are looking for "healthier" snacks to the use of artificial flavors in its products. Lastly, the statement that the Gummies are "[a]pple, watermelon, tangerine and lemon flavored candies" accurately describes the product; the Gummies contain these flavors. Cf. Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017) ("The statement 'MADE WITH Real Fruit' does not reference the presence, or lack thereof, of trans fat. In fact, the product packaging for the Nutri-Grain bars does not mention trans fat at all. Defendant's factually true statement would not cause a reasonable consumer to believe that the Nutri-Grain Bars are free of trans fat."). As the court previously held, this statement does not plausibly suggest the Gummies contain only natural ingredients. (Doc. No. 14.) Accordingly, Brown's express warranty

claim is dismissed with prejudice.  See Viggiano v. Hansen Nat. Corp., 944 F. Supp. 2d 877, 893-94 (C.D. Cal. 2013) (dismissing express warranty claim where the plaintiff failed to allege the representations on the product's packaging were false); Lam v. Gen. Mills, Inc., 859 F. Supp. 2d 1097, 1106 (N.D. Cal. 2012) (dismissing warranty claims where the plaintiff "fail[ed] to point to any affirmative statement, whether it be in General Mills's advertising or the Fruit Snacks' packaging, indicating that the Fruit Snacks are healthful").

### D. Implied Warranty

California Commercial Code § 2314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale," and enumerates six requirements of merchantable goods.  The FAC focuses on three of these requirements.  Brown alleges the Gummies (1) do not "[p]ass without objection in the trade under the contract description," Cal. Com. Code § 2314(2)(a); (2) are not "adequately contained, packaged, and labeled as the agreement may require," id. at subdiv. (2)(e); and (3) do not "[c]onform to the promises or affirmations of fact made on the container or label if any," id. at subdiv. (2)(f).  (FAC ¶¶ 187-189.)

Starbucks argues that the FAC fails to cure any of the deficiencies identified by the court in its prior order dismissing Plaintiff's original complaint.  But as discussed above, the FAC now plausibly alleges a reasonable consumer may believe the Gummies did not contain artificial flavors because the packaging failed to prominently disclose their presence.  At this stage, Starbucks does not dispute it was required to prominently display an artificial flavors disclosure on the Gummies and failed to do so.  As Starbucks fails to address Plaintiff's allegation that the Gummies were not adequately labeled and packaged as § 2314(2)(e) requires, the court denies Starbucks' motion to dismiss Plaintiff's breach of the implied warranty claim.  See Hendricks v. StarKist Co., 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) ("The Complaint sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna."); In re Trader Joe's Tuna Litig., 289 F. Supp. 3d 1074, 1093 (C.D. Cal. 2017) (same).

## E. Fraudulent Omission

Plaintiff asserts a common law and statutory fraud by omission claim. (FAC ¶¶ 112-117.) California Civil Code § 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 1710 defines "deceit," in relevant part, as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." The common law elements of fraud in California are: "(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1163 (9th Cir. 2012) (quoting Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009)) (emphasis in original). See also Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004). "Concealment is a species of fraud or deceit." Stofer v. Shapell Indus., Inc., 233 Cal. App. 4th 176, 186 (2015). "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Id. (quotations omitted).

Here, Brown alleges that Starbucks knows consumers prefer naturally flavored products over those using artificial flavors and are willing to pay a premium for these products. (FAC ¶ 15, 25-27.) Brown alleges that Starbucks knew the Gummies contained artificial flavors and knew it was required to disclose this information on the front packaging. (FAC ¶¶ 64, 84.) At this stage of the proceedings, Starbucks does not dispute that the Sherman Act and incorporated FDA regulations required it to prominently display an artificial flavors disclosure on the Gummies' front packaging. (Doc. No. 16-1 at 10

n.1.) Plaintiff alleges that Starbucks intentionally omitted this artificial flavor disclosure on the Gummies' front packaging to give consumers the false impression that the product only contained natural flavors. (FAC ¶¶ 15-16, 30, 114.) Plaintiff and consumers relied on this omission and purchased the Gummies without knowing they contained artificial flavors. (FAC ¶¶ 65, 82.) If Plaintiff had known the Gummies contained artificial flavors, she would not have purchased them. (FAC ¶ 86.) Plaintiff and consumers thus paid a premium for the Gummies, believing they contained only natural ingredients, and lost the amount of this premium as a result of Starbucks' intentional failure to prominently display an artificial flavor disclosure on the Gummies' packaging. (FAC ¶¶ 87-89.) The FAC adequately alleges that the Gummies are not what Starbucks holds them out to be and that a reasonable consumer would be deceived by Starbucks' omission. See Deutsch v. Flannery, 823 F.2d 1361 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement of [Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.") (internal quotation marks omitted).

First, Starbucks argues it did not conceal the fact that the Gummies contained artificial flavors as the ingredients list on the back packaging disclosed all ingredients. As noted above, the Sherman Act incorporates FDA food labeling regulations. See Sherman Act § 110100. 21 C.F.R. § 101.22(i) provides, in relevant part, that when a label makes "direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, . . . such flavor shall be considered the characterizing flavor." If the product "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, . . . the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored' . . . ." 21 C.F.R. § 101.22(i)(2). This regulation further provides that "[w]herever the name of the characterizing flavor appears on the label (other than in the statement of ingredients) so conspicuously as to be easily seen under customary conditions of purchase, the words prescribed by this paragraph shall immediately and conspicuously precede or follow such

name, without any intervening written, printed, or graphic matter . . . ." 21 C.F.R. § 101.22(i)(3). For purposes of its motion to dismiss, Starbucks does not dispute that, pursuant to these regulations, it was required to disclose the presence of artificial flavors on the Gummies' front packaging. Accordingly, at the pleading stage, the FAC sufficiently alleges that Starbucks concealed the fact that the Gummies contained artificial flavors as Starbucks does not dispute it had a duty to disclose this information "immediately and conspicuously" before or after the alleged characterizing flavor description—"[a]pple, watermelon, tangerine and lemon flavored candies," (FAC at 7)—on the front packaging.

Second, Starbucks argues that Brown fails to plausibly allege she reasonably relied on Starbucks' omission of an artificial flavor disclosure or suffered any damages. As discussed above, Brown sufficiently alleges she relied on the misleading Gummies packaging at the time of purchase, was unaware the Gummies contained artificial flavors, and paid a price premium for a product she thought was naturally flavored but actually contained artificial flavors. Accordingly, Starbucks' motion to dismiss Brown's fraud claim is denied.

## F. Negligent Misrepresentation

"Under California law, '[a] negligent misrepresentation claim requires a positive assertion, not merely an omission.'" In re Vizio, Inc., Consumer Privacy Litig., 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (citing Lopez v. Nissan N. Am., Inc., 201 Cal. App. 4th 572, 596 (Ct. App. 2011)). "An 'implied' assertion or representation is not enough." Wilson v. Century 21 Great W. Realty, 15 Cal. App. 4th 298, 306 (1993). Here, as discussed above and in the court's prior order, Brown fails to plausibly allege a misrepresentation. Brown does not challenge the veracity of the statement that the Gummies are "[a]pple, watermelon, tangerine and lemon flavored candies," but instead alleges that Starbucks' omission of an artificial flavor disclosure on the Gummies' front packaging misled her to believe the Gummies contained only natural ingredients. Accordingly, Brown's negligent misrepresentation claim is dismissed with prejudice.

## G. Out-of-State Class Allegations

Brown asserts fraudulent omission and negligent misrepresentation claims on behalf of a nationwide class. Her fraud claim is asserted "pursuant to California Civil Code §§ 1709-1710, *et seq*. and the common law of all states." (FAC ¶ 113.) Brown's negligent misrepresentation claim is premised on Starbucks' failure to disclose the artificial flavoring "pursuant to California and federal law," and she asserts this claim under California Civil Code §§ 1709-1710 "and the common law of all states." (FAC ¶ 119.) Brown asserts express and implied warranty claims on behalf of a nationwide class of persons in "all states with substantially similar laws." (FAC ¶¶ 166-187.) These claims are premised on alleged warranties created "by operation of California law." (FAC ¶¶ 167, 177.)

Starbucks moves to strike or dismiss Brown's allegations relating to a nationwide class and a class of those in "all states with substantially similar laws," arguing that California law does not apply to out-of-state putative class members' claims and, to the extent Brown seeks to apply the law of fifty different states, this would be "wholly impractical." (Doc. No. 16-1 at 33.) Brown argues that these issues are better determined at class certification; Starbucks has not identified a conflict between California and the laws of other states; and a nationwide class is manageable. (Doc. No. 17 at 26-27.)

The court dismisses Brown's allegations relating to a nationwide class and a class of those in "all states with substantially similar laws" as they are impermissibly vague. See Fed. R. Civ. P. 8(a). Neither Starbucks nor the court can determine whether Brown alleges California law applies to the claims of out-of-state putative class members, or if she alleges the laws of various unidentified states apply to these putative class members' claims. Brown also appears confused. The FAC alleges claims on behalf of class members pursuant to "the common law of all states," (FAC at 15, 18), and on behalf of "all states with substantially similar laws," (FAC at 25-26). But in her opposition to Starbucks' motion to dismiss, Brown argues California law applies to a nationwide class.

Such vague and confusing class allegations are insufficient. Especially here, where Brown's entire theory hinges on Starbucks' violation of a California statute. To the extent

Brown intended to assert that California law applies to the claims of out-of-state putative class members, she fails to allege "that California has 'significant contact or significant aggregation of contacts' to the claims of each class member," such that application of California law is constitutional. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (quoting Wash. Mut. Bank v. Superior Court, 24 Cal. 4th 906, 921 (2001)). Even if California law could be constitutionally applied, courts "follow[ ] a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement." Washington Mut. Bank, 24 Cal. 4th at 919. This analysis requires the party advocating for application of foreign law to identify the applicable rule of law in each potentially concerned state and to demonstrate how it materially differs from California law. Id. Brown's vague allegations make it impossible for the parties or the court to identify potentially applicable foreign law. To the extent Brown intended to assert that other states' laws apply to the claims of out-of-state-putative class members, she fails to identify these states or the laws she alleges apply. Nor does Brown establish that she would have Article III standing to assert such claims on behalf of non-California putative class members. These failures are grounds for dismissal. See Augustine v. Talking Rain Beverage Co., Inc., 386 F. Supp. 3d 1317 (S.D. Cal. 2019) ("Plaintiffs['] failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled."). Lastly, the FAC fails to define the apparent subclass of persons in "all states with substantially similar laws." See Civ. L.R. 23.1(b) (requiring class action complaints "include a statement describing the class or classes on behalf of which the action is sought to be maintained").

Accordingly, the court grants Starbucks' motion to dismiss Brown's allegations relating to a nationwide class and a class of persons in "all states with substantially similar laws," but grants Brown leave to amend. For each claim asserted on behalf of out-of-state putative class members, Brown is instructed to specifically identify (1) which states' laws apply, (2) which specific laws of these states apply, and (3) the class definition of persons

18cv2286 JM (WVG)

in "all states with substantially similar laws," if she intends to assert claims on behalf of this class. The court further cautions Brown, in light of the multiple amendments allowed in this case, that failure to adequately plead an out-of-state class may demonstrate the deficiencies identified above cannot be cured by amendment.[4]

**CONCLUSION**

Starbucks' motion to dismiss is granted in part and denied in part as follows:

1. Starbucks' motion to dismiss Plaintiff's UCL, FAL, CLRA, fraudulent omission, and breach of an implied warranty claims is denied;

2. Starbucks' motion to dismiss Plaintiff's breach of an express warranty and negligent misrepresentation claims is granted;

3. Plaintiff's claims brought on behalf of a nationwide class and/or a class of persons in "all states with substantially similar laws" are dismissed without prejudice. Plaintiff has up to and including *September 23, 2019*, to file an amended complaint addressing the issues identified related to the claims being brought on behalf of the nationwide class and/or the class of persons in "all states with substantially similar laws." If Plaintiff intends to file an amended complaint that re-asserts these claims, Plaintiff shall file a notice with the court stating that intention on or before *September 13, 2019*. If Plaintiff does not file a notice with the court by September 6, 2019, Starbucks shall file its answer to the Second Amended Complaint within the limits established by the Federal Rules of Civil Procedure; and

4. Because the court has dismissed the nationwide class claims, Plaintiff cannot rely on the damages attributable to those non-California class claims to satisfy CAFA's $5,000,000 amount in controversy requirement. In light of this, the

---

[4] Starbucks also argues the court does not have personal jurisdiction over it for out-of-state putative class members' claims. Because the court dismisses Brown's out-of-state class allegations, the court need not address Starbucks' argument at this time.

18cv2286 JM (WVG)

court is concerned that it lacks jurisdiction to entertain Plaintiff's CAFA claim. Accordingly, if Plaintiff does not amend, she is **ORDERED TO SHOW CAUSE** in writing, on or before *September 13, 2019*, as to why this action should not be dismissed for lack of subject matter jurisdiction. Plaintiff must provide the court with evidence that $5,000,000 is in controversy based on the remaining California class action claims. Starbucks is permitted, but not obligated, to respond in writing on or before *September 20, 2019*, with authority and evidence it believes may assist the court in determining whether subject matter jurisdiction exists.

IT IS SO ORDERED.

DATED: September 3, 2019

JEFFREY T. MILLER
United States District Judge

17

18cv2286 JM (WVG)